## CHICAGO RECORD-HERALD CO. v. TRIBUNE ASS'N.

(Circuit Court of Appeals, Seventh Circuit. April 26, 1921.)

No. 2834.

1. Copyright ⬦4—News not subject of copyright.

News, as such, is not the subject of copyright; but in so far as an article involves authorship and literary quality and style, apart from the bare recital of facts or statement of the news, it is protected by the copyright law.

2. Copyright ⬦57—Copyrighted news item held infringed.

An article stating news concerning Germany's hope of succeeding in the war by reason of her submarines *held* infringed under the copyright law.

3. Copyright ⬦58—What constitutes substantial part of copyrighted article not determined alone by measurement.

Whether an appropriated publication constitutes a substantial portion of that which is copyrighted cannot be determined alone by lines or inches which measure the respective articles.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Tribune Association against the Chicago Record-Herald Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Alfred S. Austrian, of Chicago, Ill., for plaintiff in error.

Harry W. Lippincott, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge. The judgment complained of was rendered against plaintiff in error upon its election to stand by its over-ruled demurrer to the declaration, which charged plaintiff in error with wrongfully publishing in its Chicago newspaper, the Chicago Herald, an original composition of which one Edwards was the author, and for which defendant in error had duly secured a copyright under the laws of the United States; that defendant in error published the copyrighted article in its New York newspaper, the New York Tribune, on the early morning of February 3, 1917, and offered it for exclusive publication in Chicago to plaintiff in error, which declined to purchase it, and it thereupon sold the exclusive right of Chicago publication to the Chicago Daily News, an afternoon paper of that city; that plaintiff in error, well knowing the article to have been copyrighted, nevertheless on the morning of said February 3, 1917, caused parts of the article to be published in the Chicago Herald, whereupon the Chicago Daily News declined to receive it or to pay the purchase price therefor.

The article as published in both newspapers is set forth in the declaration; that in the Chicago Herald, and the comparable portions of the entire copyrighted article in New York Tribune being in parallel columns, as follows:

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

## Chicago Herald.

"Germany Pins Hope of Fleet on 300 Fast Supersubmarines.

"New York, Feb. 3, 3 A. M.—(Special)—The Tribune this morning in a copyrighted article of Louis Durant Edwards, a correspondent in Germany, says that Germany to make the final effort against Great Britain has plunged 300 or more submersibles into the North Sea. These, according to this writer, were mobilized from Kiel, Hamburg, Wilhelmshaven and Bremerhaven, where for months picked crews were trained.

"They form the world's first diving battle fleet," he says, "a navy equally prepared to fight above or beneath the waves."

"There are two types of these new boats now in commission, one of 2,400 tons and one of 5,000 tons displacement."

"They dive beneath the water in a fraction of the time that it takes the older types to submerge. They mount powerful guns, are capable of great surface speeds, and are protected by a heavy armor of tough steel plate."

"The motors develop, 7,000 horse power and drive the boats under the surface at 22 knots an hour. These smaller cruisers carry a crew of from 60 to 80 men."

"The submersibles have a radius of action of 8,000 miles."

## New York Tribune.

"By Louis Durant Edwards. Copyright, 1917, by The Tribune Ass'n (New York Tribune).

"Germany plays her trumps. Three hundred, or more, submersibles have plunged into the waters of the North Sea to make the final effort against Great Britain. They mobilized from Kiel, Hamburg, Wilhelmshaven, Bremerhaven, where, for months, picked crews have trained. * * * * * *

"They form the world's first diving battle fleet, a navy equally prepared to fight above or beneath the waves. * * * * * *

"There are two types of these new boats now in commission, one of 2,400 tons and one of 5,000 tons displacement. * * * * * *

"They dive beneath the water in a fraction of the time that it took the older types to submerge. They mount powerful guns, are capable of great surface speeds, and are protected by a heavy armor of tough steel plate. * * * * * *

"The motors develop 7,000 horse power, and drive the boats over the surface at a speed of 22 knots an hour. These smaller cruisers carry a crew of from 60 to 80 men. * * * * * *

"They have a radius of action of 8,000 miles." * * * * * *

Following the stars above shown there appears in the New York Tribune very much more; the copyrighted article as there published being in its entirety about tenfold longer than the Herald publication.

For plaintiff in error it is contended (1) that its publication was of news only, and that the news feature of the copyrighted article was not properly subject to copyright; (2) that what the Herald published was not any substantial part of the entire copyrighted article.

[1, 2] It is true that news as such is not the subject of copyright, and so far as concerns the copyright law, whereon alone this action is based, if the Herald publication were only a statement of the news which the copyrighted article disclosed, generally speaking, the action would not lie. But in so far as the Edwards article involves authorship and literary quality and style, apart from the bare recital of the

facts or statement of news, it is protected by the copyright law. That the entire copyrighted article involves in its production authorship as generally understood, and manifests literary quality and style in striking degree, is impressively apparent from its perusal. While the appropriated portions comprise in perhaps larger degree the salient facts than do the deductions, descriptions, and comments with which the other parts of the copyrighted article more largely deal, they are nevertheless not wholly or strictly confined to recital of mere facts. This appears evident from the perusal of some of the portions appropriated:

"They form the world's first diving battle fleet, a navy equally prepared to fight above or beneath the waves. * * * They dive beneath the water in a fraction of the time that it takes the older types to submerge. They mount powerful guns, are capable of great surface speed, and are protected by heavy armor of tough steel plate."

This is plainly more than a mere chronicle of facts or news. It reveals a peculiar power of portrayal, and a felicity of wording and phrasing, well calculated to seize and hold the interest of the reader, which is quite beyond and apart from the mere setting forth of the facts. But if the whole of it were considered as stating news or facts, yet the arrangement and manner of statement plainly discloses a distinct literary flavor and individuality of expression peculiar to authorship, bringing the article clearly within the purview and protection of the Copyright Law.

[3] We find no merit in the contention that the Herald publication constitutes no substantial part of the copyrighted article. It presents the essential facts of that article in the very garb wherein the author clothed them, together with some of his deductions and comments thereon in his precise words, and all with the same evident purpose of attractively and effectively serving them to the reading public. Whether the appropriated publication constitutes a substantial portion of that which it copyrighted cannot be determined alone by lines or inches which measure the respective articles. We regard the Herald publication as in truth a very substantial portion of the copyrighted article, and the transgression in its unauthorized appropriation is not to be neutralized on the plea that "it is such a little one."

Nor is here influential the suggestion that the Herald article gives credit to the author, and sets forth as its authority that the article was copyrighted by the New York Tribune. Far from there being any exculpatory virtue in this, it would tend rather to convey to the reading public the false impression that authority to appropriate the extracts from the copyrighted article had been duly secured by the offending publisher.

We are of the opinion that the facts set forth in the declaration warranted the judgment, and, no error appearing, it is affirmed.