## NATIONAL INSTITUTE, INC., FOR THE IMPROVEMENT OF MEMORY v. NUTT et al.

District Court, D. Connecticut. August 13, 1928.

No. 1944.

Stephen F. Dunn and Edmond M. Bartholow (of Bristol & White), both of New Haven, Conn., for plaintiff.

Watrous, Hewitt, Sheldon & Gumbart, of New Haven, Conn. (Henry F. Parmelee and Curtiss K. Thompson, both of New Haven, Conn., of counsel), for defendants.

BURROWS, District Judge. Bill in equity alleging infringement of the copyright on certain lectures owned by the plaintiff on improvement of memory. The plaintiff is a corporation organized under the laws of the state of Delaware, and having an office and principal place of business in the city and state of New York. Robert H. Nutt, the defendant, was, at the institution of this suit, residing in the city of New Haven, state of Connecticut, engaged in the business of memory training, using the name of the American Institute for Memory Improvement as a trade-name.

About the year 1921, Felix Renick, president of the plaintiff corporation, met one Thompson, who was then delivering a course of lectures on memory training, became interested in the work, with the result that Renick and Thompson formed a partnership for the purpose of delivering lectures upon this subject. Robert H. Nutt was employed by this partnership, and in such employment became familiar with the lectures which were delivered by the Renick & Thompson partnership. Renick & Thompson, after continuing business for a while, dissolved the partnership; Renick taking over the entire business, and Thompson continuing for a short period in the employ of Renick at a stated salary. The defendant, after the dissolution of the partnership, was also employed by Renick, and continued in his employ in the business of memory training until March, 1923. Renick delivered his lectures without copyright until October 23, 1925, when they were duly copyrighted by him, as shown by the certificate of registration in evidence. On December 6, 1927, Renick assigned his copyright to the plaintiff.

The defendant, after severing his relations with Renick, delivered lectures on memory training in various places, and particularly in New Haven Conn., on the 14th and 15th of December, 1927, under the name of American Institute for Memory Training, which lectures are claimed by the plaintiff to infringe its copyrighted lectures. Neither Renick nor the plaintiff ever delivered the lectures, now copyrighted, except to audiences or classes which paid admission. There is no evidence that the lectures delivered by the defendant were copyrighted.

One of the claims of the defendant is that there was not a valid assignment of the lectures, then owned by the partnership, from Thompson to Renick. An examination of the agreement of dissolution discloses that, at the time they entered into this partnership, each acquired an equal interest in the National Memory Institute and in the *Thompson Memory Course,* and that Thompson agreed to assign, transfer, and deliver unto Renick all the assets and property owned by the partnership. Any bill of sale that might have been executed subsequent to this dissolution agreement would have been only further evidence of the conveyance of title. This agreement further sets forth that Thompson "shall refrain from any activity, including any independent work, in any manner connected with memory matters." This instrument clearly shows that Thompson by it conveyed all his interest in the Thompson Memory Course to Renick. But, whether the lectures of Thompson were conveyed to Renick or not, an examination of the portion of Thompson's lectures in evidence shows little similarity, if any, in either substance or form, to the copyrighted lectures.

The defendant attacks the validity of the plaintiff's copyright chiefly by claiming that the plaintiff's lectures had been dedicated to the public before being copyrighted; that the lectures are not original, and that there is no infringement by the defendant. The certificate of registration of the copyright, introduced by the plaintiff, is prima facie evidence, under section 55 of the Copyright Act of 1909 (17 USCA § 55), of the validity of the plaintiff's copy-

right. The burden of proof, therefore, is upon the defendant to produce sufficient evidence to overcome this prima facie presumption of validity.

■ The claim of dedication is not well founded. The record shows that these lectures were not delivered to the general public, but only to paying audiences or classes. In the case of Werckmeister v. American Lithographic Co., 134 F. 321, 324, 68 L. R. A. 591, the court said: ''Publication of a subject of copyright is effected by its communication or dedication to the public. Such a publication is what is known as a 'general publication.' There may be also a 'limited publication.' The use of the word 'publication' in these two senses is unfortunate, and has led to much confusion. A limited publication of a subject of copyright is one which communicates a knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public.''

The court continued on page 325: ''On this capacity for public representation, as distinguished from the publication of other literary productions, the courts have founded the rule that such public exhibition is not a general publication. By admission to such exhibition the general public acquire no right to reproduce the composition, either by taking notes or by the exercise of the memory. The spectator is entitled to the enjoyment of the exhibition, but there is no implication of abandonment by the author of his title, or of surrender of the rights attached to his creation. The spectator, in paying for his ticket of admission, has not paid for any right to get possession of the play for subsequent representation. Tompkins v. Halleck, 133 Mass. 43, 43 Am. Rep. 480. The same rule applies to lectures orally delivered. Bartlett v. Crittenden, 5 McLean, 32, Fed. Cas. No. 1,076; Nicols v. Pitman, supra; 26 L. R. Ch. Div. 374. In such cases, even where the hearers were allowed to make copies for their personal use, such license was limited to such individuals for the purpose of their own information, and they could not publish for profit that which they had not obtained the right of selling.''

In the case of Nicols v. Pitman, supra, N., an author and lecturer upon various scientific subjects, delivered from memory, though it was in manuscript, a lecture at the Workingmen's College, upon ''The Dog as the Friend of Man.'' The audience was admitted to the room by tickets issued gratuitously by the committee of the college.

P., the author of a system of shorthand writing, and the publisher of works intended for instruction in the art of shorthand writing, attended the lecture, and took notes, nearly verbatim, in shorthand of it, and afterwards published the lecture in his monthly periodical. On motion for an injunction to restrain the publication, held that, where a lecture of this kind is delivered to an audience, limited and admitted by tickets, the understanding between the lecturer and the audience is that, whether the lecture has been committed to writing beforehand or not, the audience are quite at liberty to take the fullest notes for their own personal use, but *they are not at liberty to use them afterwards for the purpose of publishing the lecture for profit;* and the publication of the lecture in shorthand characters is not regarded as being different in any material sense from any other, and injunction granted accordingly.

In the case of Bobbs-Merrill Co. v. Straus (C. C. A.) 147 F. 15, 18, 15 L. R. A. (N. S.) 766, the court said: ''The owner of the common-law copyright has a perpetual right of property and the exclusive right of first general publication, and may, prior thereto, enjoy the benefit of a restricted publication without forfeiture of the right of general publication. Thus, he may communicate the contents of his work under restrictions without forfeiture of the right. This communication of contents under restriction, known as a restricted or limited publication, is illustrated by lectures to classes of students, dramatic performances before a select audience, exhibitions of paintings in private galleries, private circulation of copies of manuscript, etc.'' To the same effect, Corpus Juris, vol. 13, p. 987.

It is clear, from the evidence and the decisions, that neither Renick nor the plaintiff, by delivering these lectures to paid audiences or classes, abandoned or dedicated them to the public.

■ The defendant further claims that the plaintiff's copyrighted lectures did not originate anything new; that they consist of wholesale appropriations from other authors and lectures on this subject. It is apparent, from an examination of the exhibits, that Renick obtained the foundation of his lectures from other sources, and especially from the Roth memory course, and occasionally used, to illustrate a principle, a story occurring in Roth and other works on this subject. But this does not necessarily take the plaintiff's lectures out of the realm of originality. The principle laid down in Emerson v. Davies

et al. (C. C. Mass. 1845), Fed. Cas. No. 4,436, that *any new and original plan, arrangement or combination of materials would entitle an author to a valid copyright therein, whether the materials themselves be new or old,* would seem to apply in this case.

It is noted, upon comparing the copyrighted lectures with Roth's memory course and other similar works in evidence, that the general plan, arrangement, and method of presentation in the copyrighted lectures shows something new and original. As stated in Boucicault v. Fox, 5 Blatchf. 87, Fed. Cas. No. 1,691: "It is difficult to lay down any precise rule which can be applied in all cases, as a test of originality." But, as held in Emerson v. Davies, supra,. whosoever, *by his own skill, labor, and judgment,* writes a new work, may have a copyright therein, unless it be directly copied or evasively imitated from another.

The copyrighted lectures show that not only is there a new arrangement of materials heretofore known on this subject, but also that there have been added new materials, and that they show considerable skill and labor in their preparation. An author is entitled to copyright, where he has taken existing materials from other writers and arranged and combined them in a new form, if he has exercised skill and discretion, and has presented something new and useful, for his copyright cannot prevent others from using the old materials, under the rule that the use of old materials is not an infringement. West Publishing Co. v. Edward Thompson Co. (C. C.) 169 F. 833, 853. Thus it appears that the plaintiff has produced a course of lectures which, in so far as their originality is concerned, should be protected.

The claim of the defendant that there has been no infringement of copyright is not borne out by the evidence. The unusual similarity disclosed by a comparison of the two lecture courses would seem to call for some explanation by the defendant, if he did not imitate the plaintiff's lectures; but neither the defendant nor any other person has testified in this regard. The defendant has seen fit to rest his case, in so far as· lack of infringement is concerned, entirely upon a comparison of the two lectures. A comparison, however, shows that the plaintiff's lectures have been appropriated, not only as to the substantial and material parts, but also the general method of treatment, as well as the illustrations, stories, and phraseology. It seems to me that the value of the plaintiff's property has been diminished by the defendant, and that the plaintiff is thereby injured in violation of the rule stated in West Publishing Co. v. Thompson, supra (C. C. A.) 169 F. at page 854: "That to constitute an invasion of copyright it is not necessary that the whole of a work should be copied, nor even a large portion of it, in form or substance, but that, *if so much is taken that the value of the original is sensibly diminished, or the labors of the original author are substantially, to an injurious extent, appropriated by another, that is sufficient to constitute an infringement.*"

It is not necessary to discuss other claims of the defendant. Plaintiff may have a decree for an injunction and an accounting, with actual damages, together with its costs; and it is so ordered.