**INTER–CITY PRESS, INC., a corporation, Plaintiff,**

v.

**Craig SIEGFRIED, d/b/a The Pictorial Shopper and The Daily News, Defendant.**

**No. 9023.**

United States District Court
W. D. Missouri, W. D.
July 22, 1958.

John H. Foard, Kansas City, Mo., for plaintiff.

Rufus Burrus, Independence, Mo., for defendant.

DUNCAN, Chief Judge.

The plaintiff instituted this action against the defendant under the Act of July 30, 1947, 61 Stat. 652; Title 17, § 101, U.S.C.A. for alleged violation of certain copyright claimed by it.

Plaintiff is the owner and publisher of The Independence Sentinel, The Inter-City News, The Sugar Creek Herald and The Lotawana News, and is the lessor and publisher of The Jackson County Democrat; all being newspapers published and distributed in the Jackson County, Missouri, area.

Defendant is the publisher of two newspapers, The Pictorial Shopper and The Daily News, also published and distributed in the Jackson County, Missouri, area.

Plaintiff, in his Complaint, prays that:

(1) the defendant be permanently enjoined from infringing any copyrights of any issues of any newspapers of the plaintiff.

(2) defendants be required to pay to plaintiff such damages as it suffered due to defendant's infringement, and to account to the plaintiff for all profits realized from the infringement.

The items alleged to have been copied by the defendant and constituting the infringement may be described and hereafter referred to as:

1. The news item "Bond Election Has Five Proposals"
2. The Fish Cartoon
3. The Noel Insurance Agency Advertisement
4. The Fairmont Home and Auto Advertisement
5. The Harriman "Get Ready for Summer" ad
6. The Harriman "Screen" Advertisement
7. The Harriman "You Can Do It Yourself" ad
8. The Harry F. Hall Advertisement
9. The Papenfus "Train" Advertisement
10. The George Mueller TV Advertisement
11. The George Mueller "Appliances for Christmas" ad
12. The George Mueller Range-Dryer-Refrigerator Ad

Obviously, the alleged infringements involve three distinct components to be found in practically every newspaper, viz.: the news article, the cartoon, and the advertisement.

Newspapers, as periodicals, are copyrightable under Title 17, § 3, U.S.C.A.:

"*Protection of component parts of work copyrighted; composite works or periodicals.* The copyright provided by this title shall protect all the copyrightable component parts of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope of such copyright. The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this title."

See 17 U.S.C.A. § 5 which provides:

"*Classification of works for registration*—The application for regis-

tration shall specify to which of the following classes the work in which copyright is claimed belongs: * *

"(b) Periodicals, including newspapers."

Before considering the "copyrightable component parts" of a newspaper which are accorded protection under the Copyright Laws, consideration must first be given to the "notice" required by Title 17 U.S.C.A. § 10 to preserve a copyright.

§ 10, Title 17 U.S.C.A. is as follows:

*"Publication of work with notice* —Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books seeking ad interim protection under section 22 of this title."

The form of the notice required by this title is as follows [§ 19, Title 17 U.S.C.A.]:

*"Notice; form*—The notice of copyright required by section 10 of this title shall consist either of the word 'Copyright' or the abbreviation 'Copr.', accompanied by the name of the copyright proprietor, * * *."

By amendment in 1954, the above sentence of the Section was modified by the insertion of "or the symbol (C)" following the abbreviation "Copr."

■■ There must be substantial compliance with the requisites of Section 19 in order that the copyright be preserved, the purpose of the notice being to inform the public of the copyright and to warn against re-publication.

■ Throughout the period of alleged infringements, each of the plaintiff's newspapers contained on the first page, immediately below the title, the requisite information prescribed by Section 19, supra, to constitute notice of copyright,

viz.: "(Copr.1953 by Inter-City Press, Inc)". The defendant contends that the notice was too small. It is true that the notice is of a slightly smaller type than the rest of the newsprint, yet it is quite legible to the naked eye. The court is not obligated to look beyond the face of the notice to determine its sufficiency, and in this instance, the notice given was sufficient to reasonably inform an intelligent person that the newspaper was copyrighted.

■ Notice of copyright, when adequately given on a periodical, in accordance with the statute, suffices to protect all copyrightable material contained therein. "One notice of copyright in each volume or in each number of a newspaper or periodical published shall suffice." 17 U.S.C.A. § 20.

The first infringement for consideration is the alleged copying by the defendant of a news article entitled, "Bond Election Has Five Proposals". The article appeared in the copyrighted issue of plaintiff's "Sentinel" newspapers on November 24, 1953. It recited certain information regarding a proposed county bond election, and alludes to various statements of an Emergency Bond Committee regarding the propositions involved in the election. On November 29, 1953, there appeared a verbatim copy of the article, with the exception of the final paragraph, in the defendant's "The Daily News" newspaper. The articles are identical as to caption and content, including discrepancies in printing.

It is the defendant's contention that the article was a press release issued by the Bond Committee, and that the plaintiff has failed to adequately show originality and authorship of said article to substantiate a charge of infringement. Plaintiff, on the other hand, maintains that the article is the work product of its former editor and that it possesses reporting characteristics sufficiently distinguishable to be copyrightable.

■ Where a particular newspaper article " * * * involves authorship and literary quality and style, apart from

bare recital of the facts or statements of news, it is protected by the copyright law." Chicago Record-Herald Co. v. Tribune Ass'n, 7 Cir., 275 F. 797, 798. And, though the article may be but a recitation of facts in the public domain, if there is distinguishable variation in the arrangement and manner of presentation which bespeaks of expression peculiar to authorship, then it falls within the purview of Copyright Law.

In this instance, the fact that the article is based upon a news release, does not of itself detract from its copyrightability. It may, however, be shown that a newspaper article is such a close reiteration of dedicated facts that there is wholly lacking even a modicum of originality and authorship as to bring it within the protection of the Copyright Laws. DuPuy v. Post Telegram Co., 3 Cir., 210 F. 883; Morse v. Fields, D.C., 127 F. Supp. 63.

The plaintiff having introduced into evidence his certificate of registration of the issue of his newspaper containing the article, has established prima facie the validity of its copyright. Wihtol v. Wells, 7 Cir., 231 F.2d 550. The burden of proof is, therefore, upon the defendant "to produce sufficient evidence to overcome the prima facie presumption of validity." National Institute Inc. for Improvement of Memory v. Nutt, D.C., 28 F.2d 132, 134.

The only evidence introduced to substantiate the defendant's assertion that the article is but a reiteration of a news release of the Bond Committee, is his testimony to the effect that he believed the article to be a news release. The news release itself was not in evidence. On cross-examination the defendant, when asked if the news article had been copied in its entirety, stated: "I can't tell you that it was. I can't tell you that it wasn't. I can give you my opinion, and that is that it was. It appears that way."

In order to establish a violation of a copyright, there must be shown more than a mere exact reproduction of an article appearing in a copyrighted newspaper. The Court may almost take judicial notice of the fact that many political articles exactly alike in every particular may appear in many copyrighted papers. There may be "handouts" or political advertisement reproduced from "boiler plates", or ads distributed on a national scale.

The one who sponsors such ads or reading matter has a perfect right to have them run in as many papers as he desired, and if a publisher "runs" one of such articles or ads in his copyrighted newspaper, he has no cause of action against another publisher who likewise "runs" such ad or article. But that situation has not been established with regard to the article we are considering here.

In view of the evidence it can hardly be said that the plaintiff's presumption of a valid copyright has been overcome. The reproduction of the "Bond Issue" article by the defendant was an infringement under the Copyright Law.

The next alleged infringement is the copying of a cartoon published in the December 1, 1953, copyrighted issue of the plaintiff's "Sentinel". The cartoon is entitled "Shall The Fairmount Fish Be Gobbled Up, or Shall It Survive". Said cartoon depicts several "Fish", each labeled in a different manner and composed in a distinctive arrangement giving a pictorial view of a proposed annexation proceedings then of interest to the newspaper readers. The defendant, in the December 3, 1953, issue of the "Daily News" made an exact reproduction of the cartoon without plaintiff's consent, although it was acknowledged beneath the reproduction that it came from the plaintiff's "Sentinel". This is clearly an infringement of plaintiff's copyright.

Copyright secured on a periodical or newspaper protects all copyrightable component parts thereof as though each part were individually copyrighted. 17 U.S.C.A. § 3. It has been repeatedly held that a picture or drawing which is the author's own production,

cannot be copied. Detective Comics v. Bruns Publications, 2 Cir., 111 F.2d 432. Acknowledgment of the authorship of the article, does not exculpate defendant of the infringement when it was done without the plaintiff's consent. As stated in Chicago Record-Herald Co. v. Tribune Ass'n, 7 Cir., 275 F. 797, 799, regarding copying and an acknowledgment of the source by the infringer:

"Far from there being any exculpatory virtue in this, it would tend rather to convey to the reading public the false impression that authority to appropriate the extracts from the copyrighted article had been duly secured by the offending publisher."

The plaintiff's principal complaint is that, it had set up advertisements and run them in its newspapers, which used the "letter press process", and that the defendant, using the "off-set process", simply photographed or reproduced the ads which had been run by the plaintiff in its publications.

It is conceded that the "off-set process" is more economical than the "letter press" type of printing, and that as a result thereof, the defendant was able to charge a lesser advertising rate than the plaintiff. Plaintiff further alleges that the defendant was reaping the benefit of plaintiff's work in setting the type and arranging the cuts and photographs of the advertised articles that were reproduced in the exact form as originally produced by plaintiff.

I think the plaintiff cannot complain of the method employed by the defendant in preparing the ads for its own publications, *if* the defendant had a legal right to reproduce such ads. That is, if plaintiff's copyright was not violated.

The evidence revealed that it is a common practice in the newspaper field, when a newspaper publisher finds an ad in a competing paper which has not also been run in its paper, to call the advertiser and seek to have it reproduced in its paper. That is a practice that is not exclusive with respect to the competing newspapers involved in this litigation, but apparently in the publication of all newspapers. With very few exceptions, all of the advertisements which are in controversy here, were prepared partially by the advertiser and the newspaper advertising representative, (as to contents and the general form of the ad).

It is also revealed by the testimony, that in many, if not most instances, the manufacturers of many of the articles advertised furnished to the dealer cuts or formats of the articles to be advertised; that they were given to the newspaper and reproduced (in the newspaper) in accordance with the desires of the advertiser. For the purpose of understanding the situation with which we are faced here, I think it may be well to take the different ads which are in controversy and describe them.

The first advertisement with which we are concerned here is known as the "Noel Insurance Company" ad. It was first published in the "Sentinel", one of plaintiff's papers on March 9, 1954, a 4 x 5 ad, among other ads on a page 17 x 22" in size. The identical ad was reproduced in defendant's newspaper "The Daily News" on March 18, 1954, and again in defendant's newspaper "The Daily News" on March 21, 1954. These ads were identical in wording, and in every other respect. There is nothing unusual about the ad, either as to its eye-appeal, or in any other respect; nothing that would cause it to be distinctive in any particular. The exact copy of the advertisement which was originally run in plaintiff's newspaper was given to the defendant by the advertiser, who requested that it be run in the defendant's newspapers on the dates above mentioned.

The next ad may be designated as the "Fairmount Home and Auto" advertisement, and first appeared on page 4 of plaintiff's newspaper, "The Sentinel" on March 9, 1954. The ad was 8 x 11 on a 17 x 22" page, and advertised "Pittsburg Paint", including the offering of a prize "Pittsburg Plate Glass Mirror". The advertisement was reproduced in defendant's newspaper, "The Pictorial

Shopper" on March 12, 1954, in a reduced size [7 x 9], but in all other respects identical with the advertisement in plaintiff's paper. It was re-run in defendant's paper "The Daily News" on March 14, 1954. This ad was also identical, except as to size, with the advertisement originally produced in plaintiff's paper. There was nothing distinctive or unusual about the ad.

The next advertisement is designated the "Harriman Get-ready for Summer" ad. This advertisement was 4 x 5″ in size and originally appeared in plaintiff's newspaper "The Sentinel" on April 13, 1954. It was reproduced ·in exactly the same form in defendant's newspaper "The Pictorial Shopper" on April 16, 1954. The only difference in the reproduced ad was that the type and cuts were more pronounced in color than those in the original advertisement. There was nothing unusual about the composition or the wording of this advertisement.

These are the only ads which were reproduced in the exact form as originally printed in plaintiff's copyright paper. The remaining ads show some change in form or wording.

The next ad is designated as "The Screen" advertisement, which advocated "Screen your porch for outdoor living". This was 4 x 4½ and first appeared in plaintiff's newspaper "The Sentinel" on April 20, 1954. An ad with the same heading and factual information appeared in defendant's newspaper "The Daily News" on April 25, except that the advertisement was 4 x 8″, contained additional information, and depicted a screen door and window which did not appear in the advertisement produced in plaintiff's newspaper. These were described as "Combination storm and screen doors" and also "Special screen doors" and "Durall Frameless Screens". The only similarity between these two ads is the name of the advertiser, the size of the type and the heading of the ad.

The next is defined as "Harriman You Can Do-it-yourself" ad which appeared first in plaintiff's newspaper "The Sentinel" on February 16, 1954, headed "You Can Do It Yourself" and then showed certain types of construction being carried on by individuals; it depicted a carpenter apparently building a fence, repairing a house and building a cabinet. Reading material described the pictures.

An ad appeared on behalf of the same advertiser in defendant's newspaper "The Pictorial Shopper" on February 19, 1954, showing the same type of construction in progress, but the heading of the ad differed in that it read in large letters, "Repair, Remodel".

The same ad was reproduced in defendant's newspaper "The Daily News" on February 21, 1954, in exactly the same form as produced in its newspaper "The Pictorial Shopper" on the 19th. It was again reproduced in defendant's newspaper "The Pictorial Shopper" on February 26, and "The Daily News" on February 28. The ad in "The Sentinel" was 4 x 5½″ in size; in defendant's newspaper 4 x 6¾″ in size. With the exception of the heading, which was entirely different, the reading material was identical in all of the ads.

The next is designated the "Harry F. Hall" advertisement, 6 x 14 in size, placed by Harry F. Hall, Realtor, in plaintiff's newsaper "The Inter-City News" on May 21, 1954, showing a new house and was headed "See These Lovely New Homes in Beautiful Lockwood Heights". The identical ad appeared in the defendant's "The Daily News" on May 23, 1954, except that the views of the house used in both ads were slightly different in the ad reproduced, and the address "2826 Appleton" appearing in the plaintiff's ad beneath the words "Beautiful Lockwood Heights" does not appear in the reproduced ad in defendant's newspaper. Again there is nothing distinctive or unusual about the composition or appearance of these ads. They were the same ads that might be found in many newspapers advertising houses for sale in new additions.

The next ad was designated "The Train Ad" by Papenfus & Sons Hdw. Co.

It was 8 x 9 and was placed in the center of a page 17 x 22, surrounded by other ads. It first appeared in plaintiff's newspaper "The Jackson County Democrat" on Thursday, November 26, 1953. Across the entire top of the sheet appears the words: "Papenfus & Sons Hardware" but which was no part of the advertisement here in controversy. The same advertisement appeared in defendant's newspaper "Special Shopper Daily News" on December 11, 1953. The two ads contained practically the same information with respect to the trains which were being advertised, but some additional distinguishing features appeared on the borders of the "Special Shopper Daily News" ad.

The next ad is referred to as the "George Mueller" television advertisement, which first appeared in plaintiff's newspaper, "The Sentinel" on Tuesday, November 24, 1953. It is a full page ad, 17 x 22", depicting in the upper left hand corner an automatic dryer, in the right hand corner a GE refrigerator, and next below the automatic dryer, an automatic range, and on the other side, a garbage disposal. Beneath the range on the left side was advertised a "Big 21" GE TV". There was also depicted a 21" aluminum tube TV showing a picture of a baseball player; a "21" screen low-priced console" depicting the face of an actor; and another 21" TV with panel doors. The price, in large black figures, was placed near each of the advertised articles. All of the articles depicted in this advertisement apparently were taken from matrices which we ordinarily see in advertisements depicting such articles. This advertisement was reproduced in its exact form in plaintiff's newspaper "The Inter-City Press" on November 27, 1953.

On December 4, there appeared, in defendant's newspaper "The Pictorial Shopper", a full page advertisement with the heading "General Electric Television". The size of "The Pictorial Shopper" page is one-half that of "The Sentinel" and "Inter-City News" page.

There also appeared in the heading of "The Pictorial Shopper" advertisement, a box design enclosing a picture of a house and the descriptive words "There's No Place Like Home To Prove General Electric Gives You A Sharper Picture". None of this information appeared in either of the plaintiff's advertisements. Below the heading there was depicted the four TVs which had been shown in the plaintiff's advertisements described above, except that the cuts of the sets were arranged differently in the defendant's advertisement.

There also appeared in defendant's newspaper "The Daily News" on December 22, a half page (¼th the size of the plaintiff's ad) an advertisement depicting three TVs, on the face of one was a ball player, on the other an actor, and on a table model, the face of a woman. The arrangement of the ads appearing in defendant's newspaper were entirely different from the ads appearing in plaintiff's newspaper, although they advertised the same products, which were apparently made from the same matrice.

The next is the "George Mueller Appliance" ad. This ad first appeared in the plaintiff's newspaper, "The Sentinel" on December 8, 1953, as a full page ad, the upper part of which showed a GE washer and dryer, a GE refrigerator, and a GE Electric Stove. The lower half of the ad showed a woman sitting on a hassock turning on a TV, and beneath that a carpet cleaner, and on the other side were three of the TVs which were depicted in several of the other ads. The prices at which all of these articles were to be sold were shown in the advertisement.

This ad next appeared in "The Inter-City Press" on December 11, and reproduced in all respects as originally published on December 8. In the December 11 ad there appeared in "The Daily News —Daily Shopper-Special" an advertisement in which all of the articles advertised in the advertisements of the 8th and 11th in plaintiff's newspaper appeared, but they were arranged differently in the ad, clearly indicating that it had not been photographd or reproduced from the copy from which plaintiff's ad was run.

In plaintiff's ad, the cut of the G. E. refrigerator appeared in the center of the ad near the top, near it was a picture of Santa Claus. In the defendant's ad, the cut of the refrigerator and the picture of Santa Claus were located in the right hand corner. In addition to the cuts appearing in plaintiff's ad, there appeared near the bottom in the left hand corner, the words: "Clean like you have never cleaned before" showing a person using the sweeper. There was no similarity between these ads as to prices and the articles advertised.

 Although these ads all appeared in copyrighted editions of one or another of plaintiff's newspapers, and such copyright clearly covers all the component parts which make up the copyright edition, these advertisements of themselves were not, in the opinion of the court, copyrightable, and the reproduction of them by the defendant was not a violation of any of the plaintiff's copyrights. Most of these ads were in all respects like the ads we see in newspapers every day, the cuts, or matrices, prices, and other information being furnished by the advertiser. The advertiser and the advertising salesman cooperating to prepare the form of the ads, and the figures and words included therein. Such ads are frequently run in different papers without change in any manner.

 The advertiser certainly retains the property rights in such ads, and may cause them to be run and re-run as he desires. If this were not so, every merchant would be precluded from ever reproducing an advertisement in which he used the same wording and the same cuts or matrices of the same advertised commodities, in two different papers, if the issue in one of those papers was copyrighted. Certainly the law never anticipated such restriction upon the rights of merchants to freely advertise their merchandise. Smith v. George E. Muehlebach Brewing Co., D.C., 140 F. Supp. 729.

 All of the advertisements which have been described were first run in one of the plaintiff's papers, and thereafter reproduced in one or another of defendant's papers. Many others were reproduced in the same manner, except that the edition of plaintiff's paper in which they were first run, was not copyrighted. They were offered by plaintiff as evidence of unfair trade practices on the part of the defendant. The fact that the defendant produced its paper by the off-set printing method and photographic copy furnished to it by the advertisers or authorized by them, did not render it guilty of unfair trade practices.

Plaintiff offered considerable evidence to show loss of business and decreased revenue because of the alleged violation of its copyright and unfair trade practices.

 In view of the court's finding that only two of its copyrights, i. e., the "fish cartoon" and "election story" were violated, each on one occasion, and that defendant was not guilty of unfair trade practices, I see no need to discuss further that question. I cannot see how plaintiff could have been actually damaged by the publication of those items beyond the minimum amount fixed by statute.

§ 101, 17 U.S.C.A. provides:

"If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:
* * *

(b) To pay to the copyright proprietor * * * in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated, * * * and such damage shall in no other case exceed the sum of $5000 nor be less than the sum of $250, and shall not be regarded as a penalty. * * * Second. In the case of any work enumerated in section 5 of this title, [Sec. 5; (b) Periodicals, including newspapers] except a painting, statute,

or sculpture, $1 for every infringing copy made or sold by or found in the possession of the infringer or his agents or employees."

It Is, Therefore, the conclusion of the court that the plaintiff is entitled to recover of and from the defendant, the sum of $250 for each infringement, or a total of $500.

The parties will submit a decree in accordance with the findings herein, within ten days.

Allowance of attorney's fee, requested by plaintiff under § 116, Title 17 U.S. C.A. is deferred until the entry of the decree.