264 F.2d 942
 121 U.S.P.Q. 117
 Mildred Becker SCHULTZ, Appellant,
v.
Jack HOLMES, Charles Douglas Hone, Lindley A. Jones, Carl
Hoefle and Delmar S. Porter, copartners, individually and as
copartners doing business under the fictitious firm name and
style of Tune Towne Tunes; Hill and Range Songs, Inc., a
corporation; Capitol Records, Inc., a corporation; Capitol
Records Distributing Corporation, a corporation; Rumbalero
Music, Inc., a corporation; Broadcast Music, Inc., a
corporation; Columbia Records, Inc., a corporation; Decca
Records, Inc., a corporation; Radio Corporation of America,
a corporation: Loew's Inc., a corporation, Appellees.
 No. 15973.
 United States Court of Appeals Ninth Circuit.
 March 30, 1959.
 
 Carl Hoppe, James F. Mitchell, San Francisco, Cal., Thomas P. Mahoney, Los Angeles, Cal., for appellant.
 Manuel Ruiz, Jr., Los Angeles, Cal., for Carl Hoefle and Delmar S. Porter, individually and as co-partners d/b/a Tune Towne Tunes, Capitol Records, Inc., Capitol Records Distributing Corp.
 Gang, Kopp & Tyre, Milton A. Rudin, Payson Wolff, Los Angeles, Cal., for appellees Hill & Range Songs, Inc., Rumbalero Music, Inc., Broadcast Music, Inc., Decca Records, Inc., Loew's Incorporated, Radio Corporation of America, and Columbia Records, Inc.
 Before BARNES, HAMLEY, and HAMLIN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a copyright infringement suit involving musical compositions, brought under 17 U.S.C.A. 1 et seq. Plaintiff seeks to enjoin the publishing and selling of two pieces of popular music and to recover damages for infringement.
 
 
 2
 After a trial without a jury, judgment was entered for defendants and plaintiff appeals. The only question presented on this appeal is whether the findings of fact to the effect that plaintiff's music was not copied are clearly erroneous.
 
 
 3
 In 1941 Mrs. Mildred Becker Schultz, the plaintiff and appellant herein, wrote the words and music for a composition which she entitled 'Good Old Army.' She copyrighted this composition on April 7, 1941. While the composition was not accepted by a music publishing house, Mrs. Schultz had five hundred copies of the piece printed. Many were distributed to orchestra leaders, piano players, and singers in the San Francisco area where Mrs. Schultz lives. The piece was publicly played in several night clubs and other places of entertainment, but it did not prove to be marketable.
 
 
 4
 In 1949 Mrs. Schultz rewrote the words and made some changes in the music, and gave the piece a new title-- 'Waitin' For My Baby.' She copyrighted this song on July 7, 1949. Twenty copies of 'Waitin' For My Baby' were distributed as before, some of these going to Hollywood music publishers and singers. Again Mrs. Schultz was unsuccessful in developing a demand for her music.
 
 
 5
 In 1950 Jack Holmes, also known as Charles Douglas Hone, wrote a song which he entitled 'Happy Pay Off Day.' Holmes, a singer who resided in the Los Angeles area, transferred his rights in this music to a Hollywood music publishing company known as Tune Towne Tunes. This company, which is one of the appellees, copyrighted the unpublished music on January 25, 1950. Printed copies of 'Happy Pay Off Day' were placed on sale on April 11, 1950. Tune Towne Tunes copyrighted the published work on April 17, 1950, and later assigned it to Hill and Range Songs, Inc., of New York City. The latter company is also one of the appellees.
 
 
 6
 Sometime during the next two years Holmes rewrote the words and music under the title 'The Blacksmith Blues.' Hill and Range Songs, Inc., published and copyrighted this new version of the Jack Holmes music in January, 1952. Since then this company and, through licensing arrangements, some of the other appellees have marketed 'Happy Pay Off Day' and 'The Blacksmith Blues' in the form of sheet music and records. While Holmes was named a defendant in this action, he was not served with a copy of the complaint, and it was later learned that he had died before the suit was instituted.
 
 
 7
 Mrs. Schultz heard a televised rendition of 'The Blacksmith Blues' on March 1, 1952. She concluded that the music but not the lyrics of 'The Blacksmith Blues' infringed her 'Good Old Army' and 'Waitin' For My Baby.' This action resulted. In the remainder of this opinion we will refer to the music of 'The Blacksmith Blues' as comprehending both pieces written by Holmes.
 
 
 8
 In order to establish her case Mrs. Schultz had the burden of proving that the challenged composition is similar in substantial respects to her composition, and that this similarity is due to copying. Wihtol v. Wells, 7 Cir., 231 F.2d 550, 553, citing Chicago Record-Herald Co. v. Tribune Association, 7 Cir., 275 F. 797; Fred Fisher, Inc. v. Dillingham, D.C.S.D.N.Y., 298 F. 145, 147. Substantial similarity which is the product of independent work is not actionable as copyright infringement. Mazer v. Stein, 347 U.S. 201, 218, 74 S.Ct. 460, 98 L.Ed. 630.
 
 
 9
 At the trial appellant sought to prove similarity by comparing a particular six-note thematic bar with variations, as used throughout her compositions, with variations of a particular bar used throughout 'The Blacksmith Blues.' Expert witnesses described this bar as a do-mi-sol triad with a passing note.
 
 
 10
 Appellant was unable to produce any direct evidence of copying, but endeavored to establish this circumstantially. She produced evidence which in her view shows that Holmes had access to her music. She then sought to demonstrate that the musical similarity is so striking that it could only have resulted from copying. In the latter effort appellant invoked the principle of copyright infringement law that proof of common peculiarities may warrant an inference of copying.[1]
 
 
 11
 Appellees produced no evidence bearing upon Holmes' access to appellant's music, but took the position that appellant's evidence did not prove access. Appellees did produce evidence which in their view showed 'The Blacksmith Blues' to be so dissimilar from appellant's music that no inference of copying could arise. They also put in evidence tending to show that the thematic bar on which appellant relies is in the public domain.
 
 
 12
 The trial court found in effect that appellant had failed to prove that Holmes had seen a copy or heard a performance of appellant's compositions. The court found that there are both similarities and differences between the first measure of 'The Blacksmith Blues' and the first measure of appellant's compositions.[2] Because of the differences, the court found that performance of the first measures of the respective compositions conveys to the average listener, as well as to a person skilled in music, a substantially different musical sound, feeling, and impression.
 
 
 13
 Passing to a comparison of the respective musical works in their entireties, the court found that the construction, modulations, phrasing, musical notes, and other musical material contained in 'The Blacksmith Blues' are not similar to that of 'Good Old Army' or 'Waitin' For My Baby.' It further found that a performance of either of appellant's compositions does not convey or give to the average listener an impression of similarity or resemblance to 'The Blacksmith Blues' in any particular or taken as a whole. Based on these findings, the court made the ultimate finding that neither all of 'The Blacksmith Blues' nor any part thereof was copied or prepared from 'Good Old Army' or 'Waitin' For My Baby,' or any part thereof.[3]
 
 
 14
 The evidence on which these findings were based includes the testimony of appellant and two expert witnesses called by appellees. Various musical compositions and comparative charts and three phonograph records were also introduced. All of this evidence is before us on this appeal.
 
 
 15
 Examination of the transcript, however, reveals that the attorneys and witnesses frequently supplemented their questions and answers by vocal or instrumental demonstrations. There was the singing and humming of the thematic bar of the Schultz compositions and the asserted infringing bars, as well as parts of other music in the public domain. There was singing, humming, and dancing to demonstrate the rhythm or syncopation of the music then under discussion. There was also piano playing and the plucking of a violin. While the phonograph records are before us, we have no way to determine just what parts were being referred to during the testimony. At the trial only portions of the records were played.
 
 
 16
 In so far as we can understand the written testimony and exhibits without the benefit of the other demonstrations described above, we find no warrant for concluding that the findings of the trial court concerning similarity and copying are clearly erroneous.
 
 
 17
 But even if the written testimony and exhibits raised a question in our minds as to the correctness of the findings we would not feel free to overturn findings based not only on that evidence but also on the accompanying demonstrations. It is therefore our conclusion that the findings of fact are not clearly erroneous.
 
 
 18
 Affirmed.
 
 
 
 [1]
 See Baron v. Leo Feist, Inc., D.C.S.D.N.Y., 78 F.Supp. 686, 689, affirmed 2 Cir., 173 F.2d 288; College Entrance Book Co., Inc. v. Amsco Book Co., 2 Cir., 119 F.2d 874, 875; Wilkie v. Santly Bros., Inc., 2 Cir., 91 F.2d 978, 979; General Drafting Co. v. Andrews, 2 Cir., 37 F.2d 54, 57; Edwards & Deutsch Lithographing Co. v. Boorman, 7 Cir., 15 F.2d 35, 36; Frank Shepard Co. v. Zachary P. Taylor Publishing Co., 2 Cir., 193 F. 991, 993
 
 
 [2]
 The court found:
 '12. The first measure of 'Happy Pay Off Day' and of 'The Blacksmith Blues' utilizes some notes in common with the notes of the opening measures of 'Good Old Army' and 'Waitin' For My Baby'; insofar as such musical material in 'Happy Pay Off Day' and 'The Blacksmith Blues' bears any similarity to 'Good Old Army' or 'Waitin' For My Baby,' such musical material was not copied or prepared from plaintiff's compositions. The common utilization by different compositions of a few notes such as herein found to exist occurs frequently in the field of popular music, particularly becase of the limited number of pleasing tonal combinations within the average person's range of voice and skill.
 '13. There are differences in the first measure of 'Happy Pay Off Day' and 'The Blacksmith Blues,' compared to the corresponding measures of 'Good Old Army' and 'Waitin' For My Baby'; these differences are apparent in each instance in which the musical material contained in said first measures appears elsewhere in said musical compositions. Among these differences are the use of a different passing tone between the mi and sol components of the triad upon which said first measures are contructed, and the fact that plaintiff's compositions contain a rest on the last half of the final count of their respective first measures whereas Jack Holmes' compositions do not.'
 
 
 [3]
 The trial court made no finding as to whether the thematic bar in question was in the public domain