**BALDWIN COOKE COMPANY,**
Plaintiff,

v.

**KEITH CLARK, INC., Defendant.**
No. 73 C 1244.

United States District Court,
N. D. Illinois, E. D.
June 12, 1974.

---

7. Affidavit of Stewart J. Friedman, Paragraphs 5 through 8 inclusive, at pages 84–5 of plaintiff's appendix.

Theodore W. Anderson, Neuman, Williams, Anderson & Olson, Chicago, Ill., for plaintiff.

John B. Dewey, Lockwood, Dewey, Zickert & Alex, Chicago, Ill., Gordon T. King, Coudert Brothers, New York City, for defendant.

## MEMORANDUM OPINION

MARSHALL, District Judge.

This action is brought by Baldwin Cooke Company, an Illinois corporation, against Keith Clark, Inc., incorporated under the laws of Puerto Rico, pursuant to the copyright laws of the United States. 17 U.S.C. § 1 et seq. Baldwin Cooke seeks relief pursuant to 17 U.S.C. § 101.[1] Jurisdiction is founded upon 28 U.S.C. § 1338(a).

The parties have submitted the case for decision on a stipulated record and briefs.

---

1. Baldwin Cooke seeks injunctive relief, damages suffered by it because of the alleged infringement of its copyright, profits that Keith Clark made because of its alleged infringement of Baldwin Cooke's copyright, and attorneys' fees.

## THE PARTIES

Plaintiff, Baldwin Cooke, is engaged in the publishing and marketing of advertising specialties and business gifts. All of its products are marketed by mail order. Among its products is the "Executive Planner."

Defendant, Keith Clark, is engaged in the business of designing, manufacturing and selling commercial desk calendar pads, diaries, planning books and advertising specialty items. Its products are marketed under a number of trademarks, one of which is "Guilford."

Baldwin Cooke contends that Keith Clark infringed the copyright on its "Executive Planner" as a result of the publication by Keith Clark of the "Guilford No. 545-Executive Weekly Minder."

## THE EXECUTIVE PLANNER

In 1961 Eaton Paper Corporation, a Delaware corporation, originated and developed a planning book entitled "Executive Planner." It was a 144-page book designed as a combined calendar, appointment, diary and information book with special features for business executives. Eaton published the first edition of the Executive Planner on July 21, 1961 with a notice of copyright thereon. Eaton subsequently published annual editions of the Executive Planner for the years 1963 through 1968 with notices of copyright on each edition. For the most part the 1962 through 1968 editions of the Executive Planner were distributed exclusively by Baldwin Cooke.

In January of 1968, all of the assets of Eaton were acquired by Textron, Inc., a Delaware corporation. A written assignment was executed on March 18, 1968 effecting a transfer from Eaton to Textron of all copyrights from the 1962 through 1968 editions of the Executive Planner. Simultaneously another written assignment was executed by Tex-tron, which transferred Textron's rights in the copyrights for the 1962 through 1968 editions of the Executive Planner to Baldwin Cooke. These assignments were recorded in the copyright office on April 2, 1968. Thereafter the annual editions of the Executive Planner were published and distributed exclusively by Baldwin Cooke, the new copyright proprietor.[2]

On March 9, 1973 applications for the registration of the copyrights on the 1962 through 1973 editions of the Executive Planner were filed in the copyright office together with the requisite copies of each edition. For the 1962 through 1968 editions, applications were filed by and certificates of registration were issued in the name of Eaton. For the 1969 through 1973 editions, the applications were filed by and the certificates of registration issued in the name of Baldwin Cooke. Subsequently, the copyright assignments which had been previously recorded on April 2, 1968, were again recorded in the copyright office on May 7, 1973, giving Baldwin Cooke ownership of all of the copyrights on the Executive Planner.

Basically, the Executive Planner is a combination calendar, appointment, diary and information book. Eaton began work on the Executive Planner in 1961 when it initiated the development of a format for the first edition. The first edition contained a section setting forth a diary calendar for the current year, the form of which was intended to allow the recording of various data and information; a planning calendar for the subsequent year; a page with three full tabular calendars for the preceding, current and subsequent years; a section for the recording of names, addresses and telephone numbers with a map of the United States showing the applicable telephone area codes; and a section containing various business and recreational information.[3] The art work and the

---

2. A notice of copyright applied to each copy of the 1969 through 1973 editions, showing the new copyright owner to be Baldwin Cooke.

3. Some of the information compiled in the Executive Planner was the automobile mileage between cities, a guide to dining facilities located in various parts of the United

layout which consisted of woodcuts placed on the outer corners of the diary pages for the current year along with six small consecutive monthly calendars running horizontally across the top of the diary pages, and the compilations of information for the first edition were done by Eaton. The information, data and other materials utilized in the first edition were compiled from a number of different sources.[4]

Eaton made very few changes in the Executive Planner from 1962 through 1968. Indeed, the 1969 issue of the Executive Planner, the first issue published by Baldwin Cooke, closely followed the style of the 1968 issue. However, in 1968, Baldwin Cooke undertook an extensive study of the Executive Planner including interviews with many customers, and as a result, a number of changes were made in the 1970 issue. These changes included a different presentation style for certain sections including the addition of what plaintiff claims are "esthetic lines" to the diary pages, color art work on all "data" or information pages, a new style of cover, a new separate addresses and telephone numbers insert, a new personal data page, a new holiday page, new monthly and yearly expense summary pages, a new automobile mileage section and a new "dates to remember" section. In the 1972 edition, published in 1971, the Zodiac birthday and anniversary gift information page was added.

## THE GUILFORD NO. 545—EXECUTIVE WEEKLY MINDER

Keith Clark was formed in 1923 at which time its primary business activity consisted of the design, manufacture and sale of desk planning calendars for the office supply industry. In 1954 Keith Clark commenced the design, manufacture and sale of diaries and planning books for the advertising specialty industry. Keith Clark introduced to the commercial stationery and department store trade in 1970 its Guilford line of products for the calendar year 1971. The Guilford line consisted of various types of appointment and planning books.

Soon after the Guilford line was introduced to the trade, Keith Clark was advised by certain of its advertising specialty distributors and retail outlets that there was a demand for a planning book of greater trade utility that would compete with the more sophisticated and comprehensive planning books published by other diary manufacturers such as Baldwin Cooke. In response to this demand, preliminary discussions took place among the Keith Clark art and marketing directors and certain of its officers. As a result of these discussions, Keith Clark decided to produce the Guilford No. 545—Executive Weekly Minder.

On October 10, 1971 a meeting took place among Keith Clark's art director, director of marketing and product review committee at which those attending the meeting had before them the 1971 Baldwin Cooke Executive Planner, representative material previously published by Keith Clark and brochures illustrating the varieties of planning books available to the public. Subsequent meetings were held at which time page layout, items to be included, type of cover and binding to be used, packaging, costs and price considerations were discussed. Discussions were also had regarding which items would have the most appeal and included the solicitation by Keith Clark of the views of its representatives and distributors.

The contents of the Guilford No. 545 —Executive Weekly Minder 1973 edition, included the following: a personal data page; a planning calendar for the

States, an interest table, domestic postal rates and information, basic weights and measures, commodity weights and measures, buying power broken down by states and sections therein, and various management information and decimal equivalents.

4. Some of the materials used in the first edition were already under copyrights. The copyrighted materials utilized were reprinted with the permission of the copyright owners.

current year; a diary calendar for the current year, the form of which was intended to allow the recording of various data and information; a planning calendar for the subsequent year; a holiday list for the current year; a monthly expense summary sheet; an expense summary form for the current year; a Zodiac birthday and anniversary information page; a postal information section; weights and measures information; a table setting forth decimal equivalents; pages for the recording of information concerning quarterly income, securities transactions, capital gains and losses and stock dividends; a page with three whole tabular calendars for the preceding, current and subsequent years and a section for the recording of names, addresses and telephone numbers.

The idea of the format represented by the Executive Planner's three-year calendar approach was followed. Keith Clark also decided to utilize the idea of placing woodcuts on the outer corners of the pages as Baldwin Cooke had done in the Executive Planner. Moreover, Keith Clark followed the format of the Executive Planner by placing six small consecutive monthly calendars running horizontally across the top of the open diary pages of its book.

In August, 1972 when Keith Clark introduced the Guilford No. 545—Executive Weekly Minder, it mailed to its distributors a letter describing the work. In the letter, Keith Clark stated that its Executive Weekly Minder was similar to the one sold by Baldwin Cooke and that it was being introduced in response to requests over several years for such an item. In another letter promoting the 1974 edition of the Executive Weekly Minder, Keith Clark stated that the book had been introduced in the market pursuant to the many requests for a book that was comparable to Baldwin Cooke's Executive Planner.

## VALIDITY OF BALDWIN COOKE'S COPYRIGHT

■ To be copyrightable a work must be original in that the author has created it by his own skill, labor and judgment. Dorsey v. Old Surety Life Ins. Co., 98 F.2d 872, 873 (10th Cir. 1938). The originality required by the United States Constitution (Article I, Section 8, Clause 8) and the Federal Copyright Act (17 U.S.C. § 1 et seq.) is not to be confused with the novelty standard of the patent laws. Mazer v. Stein, 347 U.S. 201, 218–219, 74 S.Ct. 460, 98 L.Ed. 630 (1953). As the Court of Appeals for the Seventh Circuit observed in Gelles-Widmer Company v. Milton Bradley Company, 313 F.2d 143, 146–147 (7th Cir. 1963):

"'Originality in this context "means little more than a prohibition of actual copying." No matter how poor artistically the "author's" addition, it is enough if it be his own.' * * * 'Since a copyright is intended to protect authorship, the essence of copyright protection is the protection of originality rather than novelty or invention.'"

Section 7 of the Federal Copyright Act, 17 U.S.C. § 7, provides in material part:

"Compilations or abridgments, adaptations, arrangements, dramatizations, translations, or other versions of works in the public domain or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title . . . ."

■■ Baldwin Cooke claims a copyright in the Executive Planner as a compilation and as an arrangement. Compilations and arrangements may consist of a collection of new matter which itself is or is not copyrightable, or they may consist entirely of matter already in the public domain, which is or is not copyrightable. The collection of non-copyrightable material may still qualify for copyright protection by reason of an original effort expended in the process of compilation or arrangement. Here,

the Executive Planner consists generally of matter within the public domain, most of which is not individually copyrightable.

█ *Presumption of validity.* Section 209 of the Federal Copyright Act, 17 U.S.C. § 209, provides that a certificate of registration "shall be admitted in any court as *prima facie* evidence of the facts stated therein." Since originality is considered to be one of the facts stated in a certificate of registration, the issuance thereof constitutes *prima facie* evidence of originality. Drop Dead Company v. S. C. Johnson & Son, Inc., 326 F.2d 87, 92 (9th Cir. 1963) ; Blazon, Inc. v. De Luxe Game Corp., 268 F.Supp. 416, 420 (S.D.N.Y.1965). Consequently, certificates of registration constitute *prima facie* evidence of a copyright's validity. Wihtol v. Wells, 231 F.2d 550, 553 (7th Cir. 1956).

Keith Clark argues that all but one of the certificates of registration issued to Eaton or Baldwin Cooke contain misstatements which jeopardize the validity of the certificates. Specifically, Keith Clark contends that the 1963 through 1973 certificates of registration claimed various revisions in material contained in the Executive Planner to which (1) Eaton or Baldwin Cooke was not the author, and (2) there was no revision made.

██ A misstatement in the registration certificate, if unaccompanied by fraud, will not invalidate the copyright or render the registration certificate incapable of supporting an infringement action. Thomas Wilson & Co. v. Irving J. Dorfman Co., 433 F.2d 409, 412 (2d Cir. 1970) ; Wrench v. Universal Pictures Co., 104 F.Supp. 374, 379 (S.D.N.Y.1952). The copyright office had all of the various editions of the Executive Planner before it. The copyright notices on each of the editions specified publication of the 1962 edition. In each of the 1963 through 1973 editions, there

was a complete updating of the Executive Planner including a new calendar and in every edition there were revisions in at least two other sections of the planner. Although there were some generalizations regarding revisions, which in fact were not made, there is no evidence that any of the applications for registration of the claimed copyright were intended to or did in fact deceive or mislead anyone. Whatever difference there may have been between the general representations as to revisions and the new matter as it actually appeared in the various editions of the Executive Planner, such differences did not render the copyright invalid. See Runge v. Lee, 441 F.2d 579 (9th Cir. 1971).

█ In the present case there were eleven certificates of copyright registration issued either to Eaton or Baldwin Cooke on the Executive Planner. Consequently, a *prima facie* case of copyrightability has been established by Baldwin Cooke.

Keith Clark has submitted to the court a great amount of material which it contends is similar to Baldwin Cooke's Executive Planner and establishes that the Executive Planner is not entitled to copyright protection.

█ I need not face the issue of whether the "prior art" submitted by Keith Clark is sufficient to rebut the *prima facie* case of copyrightability established by the issuance of the certificates of registration, for I find sufficient independent evidence which establishes the originality of the Executive Planner's compilation and arrangement.

*Independent evidence of validity.* The Executive Planner when first published was a unique and more comprehensive book than anything then on the market.[5] An examination of it shows that it is much more than a mere diary. Its arrangements are unique and its style and layout are completely different from anything which preceded it. It was de-

---

5. Keith Clark in an August, 1972 letter to its distributors conceded that it was for the first time offering a planning book like Baldwin Cooke's Executive Planner.

signed to inform and aid the business executive in a comprehensive manner.

A great deal of work went into the development of the first issue. This work included the development of a format, art work, layout and compilations by the employees of Eaton. In 1970, Baldwin Cooke endeavored to further improve the planner and as a result a number of changes were made which in effect gave the book a different appearance.

The prior art submitted by Keith Clark might establish that the Executive Planner lacks novelty, but it does not show that the planner lacks originality. The art work, styling and layout of the planner are not to be found in any antecedent publications. Indeed, the manner of presentation throughout the book establishes that the Executive Planner is more than a compilation. The selection, arrangements and combinations clearly establish the Executive Planner's originality. See Gelles-Widmer Co. v. Milton Bradley Co., 313 F. at 147, in which the Court of Appeals for the Seventh Circuit stated in part: "What the District Court found to be infringed was the selection, arrangements and combinations contained in plaintiff's copyrighted sets. These were more than mere compilations . . . . we agree with plaintiff's argument that the arrangement, the plan and the manner in which they were put together by the author, does constitute originality."

The cases cited by Keith Clark in support of its position that the Executive Planner is not copyrightable are inapposite. None of the works involved in those cases approach the sophistication and complexity of format and arrangement involved here. M. M. Business Forms Corp. v. Uarco, Inc., 472 F.2d 1137 (6th Cir. 1973), involving a single page TV service repair form which the court held lacked originality; Dorsey v. Old Surety Life Insurance Co., 98 F.2d 872 (10th Cir. 1938), dealing with a copyrighted insurance policy containing certain legal phrases which the court held were not copies by the accused's policy; Hengst v. Early & Daniel Co., 59 F.Supp. 8 (S.D.Ohio 1945), involving a single page hog gestation table which the court held was not copyrightable; Morrissey v. Procter & Gamble Co., 379 F.2d 675 (1st Cir. 1967), in which the court held that a set of certain contest rules were not copyrightable.

## INFRINGEMENT

*The similarities between the Executive Planner and the Executive Weekly Minder.* Both the 1972 edition of the Executive Planner and the 1973 edition of the Executive Weekly Minder are 140 pages in length. The overall format of the two books are identical. Pages 3 and 4 of the Executive Weekly Minder are identical with the corresponding pages of the Executive Planner. The respective tables of contents of both books show the general scheme and layout to be precisely the same. The 1973 planning calendar on pages 6 and 7 of the Executive Weekly Minder appears on the same pages of the Executive Planner and their layout is exactly the same. With regard to pages 8 through 113 of both books, which are the diary pages, the artistic arrangement at the top of these pages is precisely the same. In both books, there are six small consecutive monthly calendars running horizontally across the top of the diary pages, with a darkened border around the present month. These six small calendars are framed between a pair of small pictorial woodcuts. In both books as each new month appears, the right woodcut is moved to the left side and a new woodcut appears on the right side. The organization of the seven days of the week are identical. The 1974 planning calendar appearing on pages 114 and 115 of the Executive Weekly Minder and the Executive Planner are the same. The list of holidays on page 116 of each book is substantially the same. The monthly expense summary sheets on pages 117 through 128 of the two books are identical. The year's expense summary sheet on page 129 of both the Ex-

ecutive Weekly Minder and the Executive Planner are identical. The page on signs of the Zodiac, birthstones, flowers and traditional wedding anniversary gifts on page 130 of the Executive Weekly Minder and page 134 of the Executive Planner are identical. The weights and measures table on page 132 of the Executive Weekly Minder is identical to page 140 on weights and measures in the Executive Planner. The layout of the three tabular calendars on page 144 of the Executive Weekly Minder is identical with the corresponding three tabular calendars on the same page of the Executive Planner, with the calendar for the current year being larger than the calendars for the preceding and succeeding years. The arrangement of the covers of the two books is basically the same and the Executive Weekly Minder includes an inserted address and telephone number booklet held in a packet in the back cover. The inserts are identical in all respects.

While Keith Clark also had representative materials previously published by it and advertising materials on other planning books, the degree of similarity between the books here negates any inference that the Executive Weekly Minder was the product of individual study.

*Keith Clark's access to the Executive Planner.* The planning and development meetings held by Keith Clark in connection with the Executive Weekly Minder commenced in October of 1971 and continued thereafter until early 1972. At these meetings the Keith Clark people had at their disposal an Executive Planner. Thus, not only did Keith Clark have access to the Executive Planner, it had actual possession of it.

In August 1972 when Keith Clark first introduced the 1973 edition of the Executive Weekly Minder, it mailed to its distributors a letter in which it stated that the Executive Weekly Minder was similar to the Executive Planner sold by Baldwin Cooke and that it was being introduced in response to the many requests of its distributors over a several-year period. Moreover, in March of 1973, Keith Clark sent another letter to its distributors in which it again stated that the Executive Weekly Minder was introduced into the market in answer to the many requests for an item like Baldwin Cooke's Executive Planner. Based upon the similarities between the Executive Planner and the Executive Weekly Minder, the actual possession by Keith Clark of Baldwin Cooke's Executive Planner during the planning and development stage of the Executive Weekly Minder and the admissions of Keith Clark, I find that Keith Clark's 1973 edition of the "Guilford No. 545—Executive Weekly Minder" infringes the copyright of Baldwin Cooke on its "Executive Planner."

## KEITH CLARK'S FAIR USE DEFENSE

Keith Clark argues that since it has been in the planning book industry for some years and did not "slavishly" copy Baldwin Cooke's Executive Planner, it is not liable for copyright infringement. Specifically, Keith Clark contends that the Executive Weekly Minder contains information which was not included in Baldwin Cooke's Executive Planner and thus shows Keith Clark's selective use of the Executive Planner material to be a fair one.

It is immaterial that in some respects the two works are dissimilar, if, in other respects, the Executive Weekly Minder is similar as to a substantial element of the Executive Planner. See, Wihtol v. Wells, 231 F.2d 550 (7th Cir. 1956), and Toksvig v. Bruce Publishing Company, 181 F.2d 664 (7th Cir. 1950), both holding that a copying of a substantial portion of a copyrighted work requires a finding of infringement. In the present case, Keith Clark has utilized Balwin Cooke's format, style and arrangement in manufacturing the Executive Weekly Minder. Since there is substantial similarity between the two planning books, Keith Clark is not immunized from liability by reason of its addition of different materials.

Keith Clark also contends that to uphold Baldwin Cooke's copyrights in the planning book industry will be to preclude it from competing therein. The truth of the matter, however, is that Keith Clark is free to compete in the industry. The only restriction placed upon it is that it cannot copy. It need only do its own work and originate its own compilations, art work, layouts and arrangements. As the Court of Appeals for the Second Circuit observed in Orgel v. Clark Boardman Co., 301 F.2d 119, 120 (2d Cir. 1962): "Appropriation of the fruits of another's labor and skill in order to publish a rival work without the expenditure of the time and effort required for independently arrived at results is copyright infringement."

## BALDWIN COOKE'S FAILURE TO PLACE A NOTICE OF COPYRIGHT ON ITS ADVERTISING MATERIAL

Since 1961 Baldwin Cooke has distributed in excess of 10,000,000 pieces of advertising material, none of which contained a separate notice of copyright. Keith Clark contends that to the extent that the contents of the Executive Planner are depicted in promotional material without a notice of copyright, that material became part of the public domain, which could be copied with impunity.

The case of Imperial Homes Corp. v. Lamont, 458 F.2d 895 (5th Cir. 1972), is precisely apposite. There the copyright holder prepared and distributed to the public an advertising brochure which contained parts of copyrighted material. The copyright proprietor stated in the advertisement, however, that it claimed a copyright on the portion of the material depicted therein, but it made no effort to copyright the advertising brochure. Thereafter, the defendants obtained a copy of the advertising brochure. The defendants argued, assuming *arguendo* that they copied the copyrighted material appearing in the brochure, that material was free from copyright protection. The district court, finding it unnecessary to determine whether the defendants copied the material depicted in the advertisement, held that the copyright holder abandoned and waived its copyright covering the material depicted in the advertisement by reproducing it in the promotional brochure which was distributed to the public. The Court of Appeals for the Fifth Circuit reversed, holding that abandonment of copyright protection can only be shown by proving that the copyright proprietor intended to surrender the rights in the work he perfected. The court found that since the copyright proprietor had expressly claimed that the material depicted in the advertisement was the subject of a copyright, the intention of the copyright proprietor was to maintain the copyright protection.

While in the present case Baldwin Cooke did not state in the advertisements that it claimed copyright protection over the material depicted therein, Keith Clark has made no showing that Baldwin Cooke intended to surrender its copyright on any material contained in the Executive Planner. Every edition of the Executive Planner bore a proper notice of copyright and there is no allegation that the Executive Planner pictured in the advertising brochures[6] was without a notice of copyright. What evidence there is of intention supports the view that Baldwin Cooke intended to maintain its copyright protection over the Executive Planner.

In Scholz Holmes, Inc. v. Maddox, 379 F.2d 84 (6th Cir. 1967), the question was whether the copyrighted material appearing in an advertising booklet, itself protected by a copyright, could be copied. The court held in the affirmative, reasoning that the copyright on the booklet was solely intended to preserve the booklet's value as an advertising medium. To the extent that this decision

---

6. Exhibits 28, 29 and 30 are representative of the advertising material distributed by Baldwin Cooke.

supports Keith Clark's position that advertising the Executive Planner without a copyright on the advertisement placed the portions of the planner depicted in the advertisement before the general public and thus allowed copying thereof, I expressly disagree with it. As the Fifth Circuit Court of Appeals said in *Imperial Homes*, 458 F.2d at 899: "No one can defend the appropriation of portions of an original copyrighted work by arguing that the author published such extracts to promote the value and desirability of his copyrighted product . . . This is neither in accord with the letter of the law . . . nor with the spirit of the economic philosophy ascribed to the constitutional and statutory protection accorded copyrights which finds its basis in the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors, by assuring that sacrificial days devoted to such creative activities receive rewards commensurate with the services rendered."

Moreover, it is not the individual portions of the Executive Planner for which Baldwin Cooke claims copyright protection, but rather the arrangement and compilation of the matter contained therein and the entirety thereof. Hence, assuming *arguendo* that a certain section of the planner once depicted in a promotional brochure becomes part of the public domain, it does not follow that the arrangement and compilation of the whole is no longer protected.

The foregoing will constitute my findings and conclusions under Rule 52(a) of the Federal Rules of Civil Procedure and a decree granting Baldwin Cooke injunctive relief, enjoining Keith Clark's manufacture and sale of the Guilford No. 545—Executive Weekly Minder, will be entered in accord therewith. Counsel for plaintiff is instructed to present an appropriate decree with notice to defendant within 10 days. It is further ordered that the parties appear for a conference in chambers on September 13, 1974 at 9:30 a.m. for the purpose of discussing methods of determining the damages suffered by Baldwin Cooke because of Keith Clark's copyright infringement, the profits Keith Clark realized because of the infringement and attorneys' fees.