Charles E. SCHROEDER and Marion S. Schroeder, Plaintiffs,

v.

WILLIAM MORROW AND COMPANY and George Banta & Co., Defendants.

No. 74 C 3750.

United States District Court, N. D. Illinois, E. D.

Sept. 21, 1976.

William E. Lucas, McCaleb, Lucas & Brugman, Chicago, Ill., for plaintiffs.

Joseph Stachura, Glenview, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

This is an action for copyright infringement arising under the Copyright Act, 17 U.S.C. §§ 1, *et seq.,* and jurisdiction is here under 28 U.S.C. § 1338(a). Plaintiffs, Charles E. Schroeder and Marion S. Schroeder, claim that defendants, William Morrow and Company, a publisher, and George Banta & Co., a printer, infringed plaintiffs' Class A Copyright No. 518397 covering their work THE GREEN THUMBOOK by publishing, printing, distributing and selling defendants' THE GARDENER'S CATALOGUE. The evidence shows that Mrs. Schroeder was the author of THE GREEN THUMBOOK while Tom Riker and Harvey Rottenberg were the principal authors of THE GARDENER'S CATALOGUE. Riker and Rottenberg's corporate alter ego, The Gardener's Catalogue, Inc., has been earlier dismissed for want of venue and by stipula-

tion of the parties Morrow's parent, Scott Foresman & Company, was dismissed. Riker and Rottenberg were not sued. Morrow and Banta concede, however, that they, as publisher and printer of THE GARDENER'S CATALOGUE, can be held liable for any infringement of plaintiffs' copyright.

Defendants concede the validity of the copyright issued on THE GREEN THUMBOOK as a compilation under Section 7 of the Act. 17 U.S.C. § 7. They also concede that portions of THE GREEN THUMBOOK were copied in the preparation of THE GARDENER'S CATALOGUE. They defend upon the grounds that those portions which were copied were uncopyrightable components of THE GREEN THUMBOOK which came from either the public domain or other copyrighted works of which plaintiffs were not the owner. Defendants' alternative defense is that their taking was a fair use.

The issue of infringement has been severed from the issue of damages under Rule 42(b), Fed.R.Civ.P. This memorandum will stand as our findings of fact and conclusions of law in respect to the issue of infringement under Rule 52(a), Fed.R.Civ.P.

THE GREEN THUMBOOK is a booklet of 63 pages with a page size of 6¼ inches by 9 inches and retails at $2.95 per copy. It is a listing of sources of supplies, equipment, information and associations of all types for the gardening enthusiast. Its author, Marion S. Schroeder, described its purpose as follows:

"If you want to . . .
* plant wild strawberries or wild rice,
* buy perennials by the 6-pack or pine cones in 5-bushel lots,
* mix soilless mixes or learn how to garden under lights, .
* grow beans on your balcony or mushrooms in your basement
. . . The Green Thumbook will direct you to where-to-buy-it, how-to-grow-it information."
THE GREEN THUMBOOK, p. 5.

After some introductory instructions on how to use THE GREEN THUMBOOK, it contains nothing other than listings of the names and addresses of suppliers of seeds, plants, materials, equipment, books, periodicals and plant societies, together with brief descriptions of each. It concludes with an alphabetical index which is comprised of the proper names of the suppliers, etc., and subject matters, e. g., "Birdhouses, how to build, 53", id. p. 57.

The concept and format of listing plant and seed suppliers under appropriate headings of types of plants and listing horticultural equipment suppliers and plant societies in a booklet of this type is not novel or original with plaintiffs. See The Tender Plant Finder, 1973–74, (defendants' Exh. M), which was in Mrs. Schroeder's possession prior to the publication of THE GREEN THUMBOOK.

The various listings in THE GREEN THUMBOOK typically include the name and address of a supplier, his or her specialty and a description of any catalogs or listings available from that source. Thus, a typical entry is the first one. Appearing on page 6 of the work, under the category "SEEDS . . ." is the following:

"BURGESS SEED AND PLANT CO., Galesburg MI 49053. 616-665-7079. Vegetable seeds and plants; some flower seeds; fruit and nut trees and berries; ornamental nursery stock; perennials and bulbs; wide variety of garden supplies. Many new plant introductions each year. 42 p., 8½ x 11, color il."

Specifically, THE GREEN THUMBOOK includes the following material which is in issue in this case:

1. 350 plant and seed suppliers broken down into 37 categories.

2. 94 gardening equipment suppliers broken down into 3 categories.

3. 40 plant societies under that single caption.

4. 6 magazines under that single caption.

THE GREEN THUMBOOK listings with respect to plant and seed suppliers comprise the bulk of the work which is here in issue and consist of the name and address of the

supplier, a description of the supplier's plant specialty, catalogs and price lists available from the supplier.

The listings with respect to gardening equipment suppliers consist of the name and address of the supplier, in some instances a description of the equipment sold, in other instances a code and explanatory text indicating which of five types of equipment the supplier sells, and catalogs and price lists available from the supplier.

The listing with respect to plant societies consists of the names and addresses of 40 organizations, membership dues, a description of its periodical and occasionally a mention of special publications and services of that society.

The listing with respect to magazines consists of the name and address of the magazine, subscription rates, and a description of its general content.

Marion S. Schroeder testified to her methodology and efforts in compiling THE GREEN THUMBOOK. Insofar as the list of equipment dealers under the caption "Tractors, Tillers, Cultivators and Chippers" (pp. 36–37) she concededly used lists contained in a copyrighted publication *Lawn and Gardening Marketing*, published by Intertec Publishing Corp. of Kansas City, Missouri. Insofar as the listing of plant societies (pp. 38–40), although she did not acknowledge copying from the uncopyrighted *Directory of American Horticulture*, published by the American Horticulture Society, she did testify that she had it in her possession and utilized it in her work. As for the balance of the entries which are here in question, the evidence is that while the names of the suppliers and publications are publicly available, their collection, appraisal and description were the result of Marion S. Schroeder's individual effort. She kept extensive index files in respect to them, had personal dealings with them and utilized her own expertise as a gardener in categorizing, describing and appraising them.

In the spring of 1974 plaintiffs published THE GREEN THUMBOOK and sought and obtained from the U. S. Register of Copyrights a certificate of registration. As of the time of trial, 600 copies of the book had been published and sold.

In the fall of 1973 Messrs. Riker and Rottenberg began the development of THE GARDENER'S CATALOGUE. It is of a substantially larger format than THE GREEN THUMBOOK, 320 pages in length, with page sizes of 10¾ by 14½ inches. It retails for $6.95 per copy. It is a "trade" paperback. It consists of a mixture of gardening nostalgia, old-fashioned prints, engravings and illustrations, miscellaneous garden advice old and new, old and current gardening advertisements, information on ecology, listings of suppliers of all types and listings of books and book reviews.

The evidence shows that THE GARDENER'S CATALOGUE was compiled through substantial expenditure of time, money and effort by Riker and Rottenberg and the professional staff of The Gardener's Catalogue, Inc. This staff included professional writers, editors, a horticulturist, graphic artists, a photographer, an art director, editorial and production assistants, and a typesetter and calligrapher.

The production staff's efforts included compiling many lists of gardening sources such as societies, public agencies, vendors and suppliers of gardening items and equipment and then writing these groups in order to obtain catalogs, booklets and other related information. Included in these efforts was a request of the plaintiffs for a complimentary copy of THE GREEN THUMBOOK for "research purposes" which was received by The Gardener's Catalogue, Inc. in June, 1974.

The conceded act of copying occurred as follows. After THE GREEN THUMBOOK was received, it was cut apart and its various lists were indexed in files according to their subject matter along with other information in the files of The Gardener's Catalogue, Inc. In the final production, the lists from THE GREEN THUMBOOK, together with other lists were delivered to the typesetters. Substantial deletions had been made from THE GREEN THUMBOOK ma-

terial. Thus, only the names and addresses of the plant, seed and equipment suppliers were used. There was no copying of the description of the suppliers' specialty or of its catalogs, price lists, etc. Various of THE GREEN THUMBOOK'S categorizations or headlines were, however, used.

This same approach was taken with respect to the plant societies and magazines. Only the names and addresses were utilized. No information was copied respecting dues, the names of monthly publications or the contents of the publications.

While virtually all of the names and addresses appearing on 27 of the 63 pages of THE GREEN THUMBOOK were copied, they comprise only 3½ pages or approximately 1% of the total printed material appearing in THE GARDENER'S CATALOGUE. Nevertheless, page 4 of THE GARDENER'S CATALOGUE states:

> "The articles and illustrations it [The Gardener's Catalogue] contains represent only the top of the proverbial iceberg as far as available gardening information is concerned. The words and graphics are meant to be entertaining as well as informative. However, the *most important strata* of this book is buried in the *source lists* and *bibliographies*.
>
> \* \* \* \* \* \*
>
> "At this point you can buy nothing directly through THE GARDENER'S CATALOGUE. Most of the ads in this book are antiques meant to show how little things have changed. *All the where-to-buy-it information is contained in the source lists.*"

(Emphasis supplied)

Furthermore, while the copied information comprises only 1% of THE GARDENER'S CATALOGUE, it is commingled with the other materials in the accused book.

Defendant Morrow is an established New York publisher. It has in excess of 750 titles in its current catalog. In April, 1974 it contracted with The Gardener's Catalogue, Inc. to prepare a manuscript for THE GARDENER'S CATALOGUE. The manuscript when delivered to Morrow was to be in "camera ready" form, *i. e.*, for offset reproduction. Defendant Banta was the printer of THE GARDENER'S CATALOGUE under contract with Morrow. On October 28, 1974 an initial printing was completed; on November 11, 1974 another printing took place. In total the two printings constituted a run of 151,200 copies. Notice of infringement was served upon Morrow through its parent, Scott Foresman & Company, orally on November 22, 1974 and in writing on November 25, 1974. This action was commenced December 27, 1974 and Banta received its first notice of infringement with the service of summons on it.

Subsequent to the notice of infringement, THE GARDENER'S CATALOGUE was revised and no contention is made that the revision infringes plaintiffs' copyright. However, substantial numbers of the originally allegedly infringing version were sold after notice of infringement. Altogether Morrow has received $468,656 in gross revenues from the sale of the first version and Banta received $122,167.33 for printing it.

Section 7 of the Copyright Act reads as follows:

> "Compilations or abridgments, adaptations, arrangements, . . . or other versions of works in the public domain or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, . . . shall be regarded as new works subject to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, . . . ."

17 U.S.C. § 7.

In light of that statutory authorization for the grant of a copyright on compilations and arrangements and certain of the decisions of the court of appeals for this circuit, defendants' concession of the validity of plaintiffs' copyright in respect to the totality of the work THE GREEN THUMBOOK

was well made. *Adventures in Good Eating, Inc. v. Best Places to Eat, Inc.*, 131 F.2d 809 (7th Cir. 1942); *Gelles-Widmer Co. v. Milton Bradley Co.*, 313 F.2d 143 (7th Cir. 1963); *Baldwin Cooke Company v. Keith Clark, Inc.*, 383 F.Supp. 650 (N.D.Ill.1974), *aff'd* 505 F.2d 1250 (7th Cir. 1974).

In normal circumstances, defendants' concession of validity coupled with its admission of access and copying would end the matter. But defendants strenuously urge that plaintiffs' valid copyright of THE GREEN THUMBOOK as a compilation extends only to the entire work and does not grant plaintiff a protectable monopoly in respect to the information which defendants copied.

A valid copyright on a compilation of materials in the public domain grants the copyright holder a monopoly in respect to the compilation as a whole. *Baldwin Cooke Company v. Keith Clark, Inc., supra.* It does not, however, grant the copyright holder a monopoly in respect to the public domain information contained in the compilation. It is the originality of assembly and presentation which is rewarded and protected against plagiarism. Thus, in *Baldwin Cooke Company v. Keith Clarke, Inc.*, we said, ". . . the manner of presentation throughout the book establishes that the Executive Planner is more than a compilation. The selection, arrangements and combinations clearly establish the Executive Planner's originality." 383 F.Supp. at 656. Comparable language is found in *Gelles-Widmer Co. v. Milton Bradley Co.* in which the court of appeals said that what was infringed was "the selection, arrangements and combinations contained in plaintiff's copyrighted sets. These were more than mere compilations. . . . [T]he arrangement, the plan and the manner in which they were put together does constitute originality." 313 F.2d at 147.

Thus, it is the "collecting, . . . appraisal, and . . . description and editing," which are protected under a compilation copyright. *Adventures in Good Eating, Inc. v. Best Places to Eat, Inc., supra*, at 812–813.

The evidence shows that insofar as the lists of the names of "plant societies" and "lawn and garden tractors, shredders, chippers" are concerned, that degree of originality and independent effort which would serve to render them protected parts of the entire compilation are not present. Marion S. Schroeder obtained that information from the uncopyrighted *Directory of American Horticulture* the contents of which are in the public domain and the copyrighted publication *Lawn and Garden Marketing*, in respect to which she did not own the copyright and did not obtain the permission or approval of the copyright owner for reproduction. Consequently, plaintiffs are not entitled to the exclusive right to the use of that information even in the form that it appears in THE GREEN THUMBOOK, and consequently, they cannot be heard to complain of defendants' copying of it.

The copyrighted compilations of suppliers of seeds, plants, decorative equipment, light gardening equipment and gardening books and magazines present a different situation. Here the evidence shows that Marion S. Schroeder, through considerable individual effort, research and dealings with the suppliers, and reading and reviews of the books and magazines, compiled her own lists, categorized them and commented briefly on their product specialties, catalogs and content. Her efforts at originality here were in all essential respects the same as the efforts and originality of the plaintiff's authors in *Adventures in Good Eating*. Unlike *Adventures in Good Eating*, however, defendants here did not copy plaintiffs' comments and appraisals. All that was taken were the names and addresses of the suppliers, publishers, etc., and in some instances, plaintiffs' category or title, *e. g.*, "Fruits, Nuts and Berries."

No authority has been called to our attention which suggests that a compilation copyright holder obtains a monopoly on the name of another by including that name in the compilation. It is the categorization and bringing together in one place—in a

very crude sense, the literary context within which the name is used—that is protected. As the court of appeals said in *Adventures in Good Eating, Inc.*, "Originality in the compilation of a directory does not mean an entirely new conception of a directory. Any person may produce a directory of [suppliers], but he must 'start from scratch,' do his own collecting, his own appraisal, and his own description and editing." 131 F.2d at 812–813.

■ In the final analysis then, our question is, does that breadth of language in *Adventures in Good Eating, Inc.* embrace Marion S. Schroeder's efforts here? We think not. The evidence shows that while Marion S. Schroeder expended considerable effort in her categorized compilations, there were in existence and available to her and consulted by her, other listings and catalogs of a like import. While her description of the various sources and publications were her original effort, the categorization was not. While the totality of her work constitutes an original contribution to the literature on gardening, the names and categories do not.

We do not have here the slavish copying of a compilation of material in the public domain amplified by the compiler's original presentation as was present in *Adventures in Good Eating, Inc.*, supra, and *Baldwin Cooke Company v. Keith Clark, Inc.*, supra. Rather, we have defendants who have eschewed those marks of originality for which Marion S. Schroeder was entitled to the reward of a compilation copyright and have limited their copying to information which we conclude was and remains in the public domain.

Because of our conclusion with respect to the scope of the protection afforded plaintiffs by their copyright, we find it unnecessary to decide defendants' alternative defense of fair use. We do observe, however, that unlike the authorities relied upon by defendants in this regard (*Eisenschiml v. Fawcett Publications, Inc.*, 246 F.2d 598 (7th Cir. 1957), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957), *Mathews Conveyer Co. v. Palmer-Bee Co.*, 135 F.2d

73 (6th Cir. 1943), and *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966)), the material taken from plaintiffs' book, THE GREEN THUMBBOOK, was substantial in quantity and regarded by defendants as "the most important strata" of THE GARDENER'S CATALOG. In these circumstances, were the copied information protected, we doubt that defendants would be entitled to assert fair use as a defense.

■ For the foregoing reasons, judgment will enter in favor of defendants and against the plaintiffs. Because the action has, in our opinion, been prosecuted in good faith and with a reasonable likelihood of success, defendants will not be granted an award of attorneys' fees.