Doris H. EKERN, Plaintiff,

v.

SEW/FIT COMPANY, INC. and Ruth Oblander, Defendants.

No. 82 C 4455.

United States District Court,
N.D. Illinois, E.D.

June 14, 1985.

Thomas R. Juettner, Michael Piontek, Paul G. Juettner, Gary, Juettner & Pyle, Chicago, Ill., for plaintiff.

Howard L. Ward, Chicago, Ill., L. John Crittenden, LaGrange, Ill., Ronald A. Sandler, Jerry A. Schulman, E. Leonard Rubin, Gerald S. Green, Epton Mullin Segal & Druth, Ltd., Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

The parties have filed cross motions for summary judgment. Plaintiff moves for summary judgment on Counts II (breach of contract) and III (breach of fiduciary duty). Defendants move for summary judgment on all counts of the complaint. A brief description of the relevant facts precedes a discussion of the cross motions.

Plaintiff, Doris Ekern ("EKERN"), is a self-employed dressmaker, sewing teacher and author. Defendant, Sew/Fit Company ("SEW/FIT"), is a publisher of books on the subject of sewing and fitting garments using the "Sew/Fit Method." Defendant, Ruth Oblander ("OBLANDER"), is the founder, sole shareholder and president of Sew/Fit. Oblander also teaches and has experience in the sewing and fitting of garments using the "Sew/Fit Method." She is also the author of a number of books on the subject of sewing.

In the summer of 1975 Oblander asked Ekern to write a book on the subject of the fitting of women's slacks using the Sew/Fit method. Beginning on December 21, 1976 Ekern and Oblander entered into a series of written agreements by which Defendants became entitled to the exclusive

right to publish Ekern's book ("Slacks Cut-to-Fit Your Figure" ("SLACKS")) in return for the payment of certain royalties.

Plaintiff began *"Slacks"* in 1975 and finished the work sometime in late 1976. *"Slacks"* was apparently a successful publication. From 1977 through 1981 *"Slacks"* sold over 124,000 copies and placed at a respectable number three (3) on the Sew/Fit list of "top sellers." Despite the success of her book, however, Ekern's full-time employment with Sew/Fit was terminated on December 1, 1980.

Prior to Plaintiff's termination, Oblander began to work on a book entitled "Slacks for a Perfect Fit" ("PERFECT FIT"). Some four weeks after Plaintiff's termination, on January 9, 1981, Defendants decided to discontinue publication of "Slacks" and to begin publication of Oblander's book *"Perfect Fit."* Oblander completed the book in the last two weeks of January (along with her usual travel and lecture activities). Spring of 1981 saw the publication of over 10,000 copies of *"Perfect Fit."* Further, the Oblander book was substituted for Plaintiff's book on the April 1981 Sew/Fit publication list. Thereafter Oblander's book replaced *"Slacks"* on all subsequent Sew/Fit publication lists and orders requesting copies of *"Slacks"* were consistently filled with copies of Oblander's *"Perfect Fit."*

The party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. *Cedillo v. International Association of Bridge and Structural Iron Workers,* 603 F.2d 7, 10 (CA 7 1979). All factual doubts are resolved against the movant. Although some courts have expressed a preference that certain copyright issues be decided by a jury (*viz.* "substantial similarity"), the nature of the action does not, in and of itself, preclude summary disposition. *E.g., Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (CA 2), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1981).

*I. Defendants' motion for summary judgment*

■ Counts I and IV allege that Oblander's book (*"Perfect Fit"*) and the *"Sew/Fit Manual"* infringe on the Ekern copyright to *"Slacks."* In order to establish an infringement Ekern must prove 1) ownership of a valid copyright and 2) copying of the work by the Defendants. *Atari, Inc. v. North American Phillips Corp.,* 672 F.2d 607, 614 (CA 7) *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). *See generally 3 M. Nimmer, Nimmer on Copyright* § 13.–01, at 13–3 (1983) (hereinafter "NIMMER"). "Because direct evidence of copying is often unavailable, copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Atari, supra,* at 614.

■ Initially, Defendants contend Ekern asserts no protectable copyright interest and therefore she may not maintain an action for infringement. We address this issue before proceeding to a discussion of the elements identified in *Atari.* Copyright provides no protection to such broad areas as theories, writing styles and technical explanations. *Atari, supra,* at 615. "Unlike a patent, a copyright gives no exclusive right to the art disclosed, protection is given only to the expression of the idea—not the idea itself." *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). Likewise, instructional vocabulary and thematic elements are not protected. *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (CA 2), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976); *McMahon v. Prentice-Hall, Inc.,* 486 F.Supp. 1296, 1304 (E.D.Mo. 1980). Defendants argue that certain "trade dress" common to Sew/Fit publications and elements of "common expressions within the vocabulary of sewing" cannot serve as a basis for Ekern's infringement claim. This is a correct statement of the law (*E.g., See v. Durang,* 711 F.2d 141, 143 (CA 1983) ), but the alleged infringement in

this case does not consist solely of "trade dress" and common sewing expressions.

Plaintiff complains Defendants have appropriated specific text *and* artwork from her book; text and artwork which is subject to her copyright. Therefore, the issue we must address is whether the artwork identified by Plaintiff, in conjunction with the supporting text, warrants copyright protection. For the purpose of this motion the court finds Ekern is the owner of the copyright in the illustration contained in *"Slacks."* Moreover, we find the identified text and artwork are sufficiently removed from the realm of theories, ideas and concepts to warrant copyright protection.

■■■ As *Nimmer* explains, the copyrightability of a work's subject matter is one of the elements of "ownership." *Nimmer* § 1301.[A]. Registration of a copyright constitutes prima facie proof of ownership. 17 U.S.C. § 410(c). *Baldwin Cooke Co. v. Keith Clark, Inc.,* 383 F.Supp. 650, 655 (N.D.Ill., *aff'd.* 505 F.2d 1250 (7th Cir.1974). Defendants, therefore, have the burden of overcoming Plaintiff's prima facie proof of the copyrightability of the subject matter of her work. The Ninth Circuit's decision in *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485 (CA 9), *cert. denied,* —— U.S. ——, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984) provides an instructive analysis of the copyrightability issue. *See also Reyher v. Children's Television Workshop,* 533 F.2d 87, 91 (CA 2 1976).

The Plaintiff in *Landsberg* developed a strategy for the playing of Scrabble and, in the course of publishing an account of his strategy, requested permission of the Defendant, Selchow and Richter ("S & R"), to use the Scrabble trademark. In order to evaluate Plaintiff's request, S & R requested and received a copy of Plaintiff's manuscript.

At the time it received Plaintiff's manuscript S & R was in the process of formulating its own instruction book on the playing of Scrabble (the "Scrabble Handbook"). The employee reported Plaintiff's manuscript had merit and S & R initiated negotiations with Landsberg for the rights to the manuscript. Negotiations, however, broke off and S & R severed whatever relationship it had with Landsberg. S & R thereafter published its Scrabble Handbook.

The district court found for Landsberg on the infringement claim. Although the court found no verbatim copying, it did find S & R had paraphrased large parts of Plaintiff's manuscript and created a handbook substantially similar to Plaintiff's work. The Ninth Circuit Court of Appeals reversed, holding no infringement occurred because the alleged appropriations were non-copyrightable ideas. The Court of Appeals found the similarity between the two works resulted from the Defendant's restatement of unprotectable ideas contained in Plaintiff's manuscript. 736 F.2d at 489.

Central to the *Landsberg* holding is the understanding that the copyrightability of fact-based works is fundamentally different from that of fictional accounts. Fact-based works are limited to a rather narrow range of expression. *Landsberg, supra,* at 488 (a fact based idea "cannot be expressed in in a wide variety of ways"). More likely than not a subsequent expression of a fact-based idea will appear to be a substantially similar paraphrase of the original work. Thus, before an infringement of a fact-based work will be found, the similarity of the works "may have to amount to verbatim reproduction or very close paraphrasing." *Id.; 1 Nimmer,* § 2.11 [A]-[B].

■■■ The rationale behind Judge Goodwin's analysis in *Landsberg* is relatively straightforward. The finding that a fact-based work is copyrightable effectively grants its author a copyright on ideas when no later author could restate the ideas contained in the original work without being found to infringe on the original work. Such a result runs against the policy behind the Copyright Act to grant protection to the expression contained in a work without diminishing the free exchange of ideas. *See Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (CA2 1930), *cert. denied,*

282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931).

Defendants' argument parallels the reasoning found in *Landsberg*. They argue the appropriations alleged by Ekern are not copyrightable. Specifically Defendants focus on short technical phrases and sentence fragments which appear in both works. If the only appropriations alleged in this case consisted of such short technical textual passages describing sewing techniques, we might agree with Defendants. However, Ekern alleges more than appropriation of textual passages. She alleges the appropriation of text *and* artwork and this is what we think distinguishes this case from the cases cited by Defendants.

For example, *McMahon v. Prentice-Hall, supra,* involved allegations of appropriated text, photographs and organization, but the principal claims involved appropriations of text. To the extent *McMahon* involved issues of appropriated artwork (photographs and organization) that case is inapposite because there the Plaintiff did not own the copyright to specific artwork[1] and the court specifically found only a sporadic use of the unprotected photographs contained in the original work. 486 F.Supp. at 1303. This case involves the direct lifting of illustrations to which Plaintiff held the copyright. Originality of expression in this case stems from the combination of textual explanation and pictorial illustration. *See Baldwin Cooke, supra,* at 656. We, therefore, find Ekern's work is copyrightable.

■ We now turn to the remaining elements of copyright ownership. During discovery, Defendants twice admitted Plaintiff was the owner of a valid copyright in *"Slacks."* Defendants now contend *"Slacks"* was a work for hire under the 1909 Copyright Act. The inconsistency of these two positions raises genuine issues of

material fact. Consequently, for the purposes of this motion, we deem Plaintiff the owner of the copyright in *"Slacks."*

At this point we specifically note that Plaintiff is also the owner of the copyright in the artwork contained in *"Slacks."* In the absence of contradicting evidence from Defendants we must assume the artwork in *"Slacks"* was "work for hire" under the 1909 Act. *1 Nimmer.* § 5.03 [B] [2] [c] at 321. *See May v. Morganelli-Heumann & Assoc.,* 618 F.2d 1363, 1366–69 (CA 9 1980). Thus we find the first *Atari* element satisfied: Plaintiff is the owner of a valid copyright in the text and artwork contained in *"Slacks."*

■ The second element identified in *Atari* is the existence of copying by the Defendants. As previously mentioned, this element is satisfied by a showing that Defendants had access to the work and a showing of substantial similarity between the two works. Defendants do not contest access to Plaintiff's work. Therefore, the remaining issue is whether a substantial similarity exists between the text and artwork in *"Slacks"* and the text and artwork in *"Perfect Fit."* Plaintiff need only show a substantial similarity between the elements of the two works. *Atari, supra,* at 614.

■ Plaintiff's brief alleges thirty appropriations. At least five of the alleged appropriated illustrations appear to be direct copies of Plaintiff's work with substantially similar supporting text.[2] The specific examples of direct lifting (*supra,* note 2), along with other alleged appropriations (appropriations which do not clearly constitute direct lifting) are sufficient to create triable issues of fact. This finding is sufficient to preclude summary judgment in favor of Defendants. Consequently, Defendants' motion for summary judg-

---

**1.** In passing on Plaintiff's artwork claim, the *McMahon* court noted the potential for an infringement claim based solely on the organization of a "unique collection and arrangement" of photographs to which the Plaintiff does not have the copyright. *McMahon, supra,* at 1303. *McMahon* therefore suggests Ekern would argu-

ably have an infringement claim even if she did not own the copyright in the *"Slacks"* illustrations.

**2.** *E.g.,* Dx–2, 3 at 26, 47 (stomach); at 31, 54 (pin side seam); at 31, 54 (pin waist to waist); at 45, 59 (zipper); at 47, 59 (elastic band).

ment on Count I and VI is denied. Defendants' motion for summary judgment on Count IV, however, is granted.

█ Count IV alleges an infringement of *"Slacks"* by the *Sew/Fit Manual.* Plaintiff, however, has failed to specifically identify any appropriated material contained in the *Manual.* Inasmuch as copyright does not protect ideas, theories and concepts, Plaintiff cannot make such a generalized infringement claim and Defendants' motion for summary judgment must be granted. Accordingly, we also dismiss Count V (alleging a breach of an oral contract based on the Sew/Fit Manual) for lack of pendent jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## II. Plaintiff's motion for summary judgment

Plaintiff has moved for partial summary judgment on Counts II and III contending that the undisputed facts in this case establish a breach of contract and a breach of fiduciary duty by Defendants. First, Plaintiff contends Defendants' replacement of her book with the Oblander book constitutes a breach of their express promise to use their best efforts to sell, promote and distribute *"Slacks."* Next, Plaintiff contends the substitution of the Oblander book also constitutes a breach of an implied promise of good faith and fair dealing by Defendants. Defendants argue that no breach of either express or implied terms occurred because the writings signed by the parties (Ex. A through C) provide Defendants with substantial discretion in discontinuing the publication of Plaintiff's book.

█ The initial royalty agreement allows Sew/Fit, "in its discretion [to] discontinue the publication or distribution" of *"Slacks."* Ex. B. The second royalty agreement provides for termination of the agreement if *"Slacks"* is no longer on sale and if Sew/Fit chooses not to bring out another edition of the book. *See* Ex. C. As we read these provisions, the discretionary right of the publisher to discontinue

publication is not necessarily at odds with the automatic operation of the termination clause (where the book is not on sale and the publisher decides not to bring out a new edition). The first provision operates to the publisher's advantage, while the second clearly operates to the advantage of the author. Plaintiff's contrary interpretation both ignores and distorts the plain meaning of the contract language. For example, the initial royalty agreement clearly gives Sew/Fit the right to discontinue publication at its discretion: Plaintiff's interpretation of the second royalty agreement ignores this language and would hold Sew/Fit to the agreement for the length of Plaintiff's copyright. Therefore, we agree with Defendants that the decision to discontinue publication of Plaintiff's book constituted the exercise of an express contract term and cannot constitute a breach of the best efforts clause. However, we do not agree with Defendants that such a finding compels the conclusion that substitution of the Oblander book for Plaintiff's work did not constitute a breach of the implied covenant of good faith and fair dealing. *See Rao v. Rao,* 718 F.2d 219, 222–23 (CA7 1983); *3 Nimmer* § 10.11[B], at 1096–96.1 (1983). As we have already found, Plaintiff may be able to make out infringement in this case. Consequently, if infringement is shown, Defendants may also have breached the implied covenant of good faith in that they published a book based on Plaintiff's work for the purpose of diverting royalties from Plaintiff. *See Corner v. Israel,* 732 F.2d 267, 271 (CA 2 1984); *Nelson v. Mills Music,* 278 A.D. 311, 104 N.Y.S.2d 605 (N.Y.1951), *affd,* 304 N.Y. 966, 10 N.E.2d 892 (1953). Although our interpretation of the contract in this case precludes Plaintiff from arguing a breach by Defendants of the best efforts clause based on the decision to discontinue Plaintiff's book, the motion for summary judgment on Count II must be denied.

In Count III Plaintiff contends Defendants have breached a fiduciary duty. Defendants maintain no breach can be found where no fiduciary relation has been shown

to exist. We agree with Defendants that no fiduciary relation exists in this case and therefore grant summary judgment for Defendants on Count III.

 The relationship between a publisher and an author is not generally regarded as one between fiduciaries. *E.g., Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co., Inc.,* 30 N.Y.2d 34, 330 N.Y.S.2d 329, 281 N.E.2d 142, 145 (1972). Consequently the proponent of the fiduciary relationship bears the burden of showing by clear and convincing evidence that the "circumstances make it certain that confidence was reposed on one side and influence resulted on the other." *Vargas v. Esquire,* 166 F.2d 651, 653 (CA 7), *cert. denied,* 335 U.S. 813, 69 S.Ct. 29, 93 L.Ed. 368 (1948). *See also In Re Estate of Nelson,* 132 Ill.App.2d 544, 270 N.E.2d 65, 70 (1st Dist 1971) (evidence of fiduciary relation must be so strong "it can lead only to one conclusion"). Because we find the rights and duties of the parties in this case are governed by the various writings, we do not believe Plaintiff has met her burden of making a clear and convincing showing that a fiduciary relationship existed in this case. Defendants motion for summary judgment on Count III is therefore granted.

### III. Conclusion

In sum, then, Defendants' motion for summary judgment on Counts I, II and VI is denied. Defendants' motion for summary judgment on Counts III and IV, however, is granted. Count V is dismissed for a lack of pendent jurisdiction. Plaintiff's motion for summary judgment is, in all respects, denied.

IT IS SO ORDERED.